Hearing: February 25, 2020 at 10:00 a.m.
Objections: February 18, 2020 at 5:00 p.m.

WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Alan Nisselson, Interim Chapter 7 Trustee*
156 West 56th Street
New York, New York 10019
Telephone (212) 237-1000
Attorneys Appearing: Alan Nisselson (anisselson@windelsmarx.com)
Leslie S. Barr (lbarr@windelsmarx.com)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>HELIOS AND MATHESON ANALYTICS, INC., et al.,<br><br>Debtors. | Chapter 7<br><br>Case Nos. 20-10242 through 20-10244-smb<br>(Motion for Joint Administration Pending) |

**NOTICE OF TRUSTEE'S APPLICATION FOR AN ORDER AUTHORIZING THE TRUSTEE TO EMPLOY AND RETAIN CASSEL SALPETER & CO., LLC AS FINANCIAL ADVISOR FOR THE TRUSTEE AS OF FEBRUARY 5, 2020**

**PLEASE TAKE NOTICE THAT** upon the application (the "**Application**") and supporting papers including the Declaration of James S. Cassel and Engagement Letter ("**Supporting Papers**") of Alan Nisselson ("**Trustee**"), interim trustee for the chapter 7 estates of *Helios and Matheson Analytics Inc., a/k/a MovieFone*, Case No. 20-10242, *Zone Technologies, Inc., a/k/a Red Zone, a/k/a Zone Intelligence*, Case No. 20-10243-smb, and *MoviePass, Inc.*, Case No. 20-10244-smb (collectively, "***Debtors***"), by his proposed attorneys, Windels Marx Lane & Mittendorf, LLP, a hearing will be held before The Honorable Stuart M. Bernstein, United States Bankruptcy Judge, in his courtroom at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, **on February 25, 2020 at 10:00 a.m., prevailing Eastern time** (the "**Hearing**" ), or as soon thereafter as counsel may be heard, for the entry of an Order authorizing the Trustee to retain and

{11780926:1}

employ Cassel Salpeter & Co., LLC as financial advisor to the Trustee as of February 5, 2020, all as more particularly described in the Motion and Supporting Papers.

**PLEASE TAKE FURTHER NOTICE THAT** copies of the Application and Supporting Papers may be inspected on the Bankruptcy Court's website, www.nysb.uscourts.gov (the "**Website**") at the Bankruptcy Court Clerk's office, or by request to undersigned counsel. A Pacer password is required to access documents on the Website.

**PLEASE TAKE FURTHER NOTICE THAT** responding papers, if any, must be filed with the Court pursuant to the Court's Electronic Means for Filing, Signing and Verification of Documents (General Order #399), which can be obtained on the Website, and a hard copy of the **responding papers must be received no later than February 18, 2020 at 5:00 p.m., prevailing Eastern time** (the "**Objection Deadline**"), by (i) the undersigned proposed attorneys for the Trustee, (ii) The Chambers of the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, and (iii) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014. Only those responses that are timely filed, served and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Trustee without further notice. The parties are required to attend the Hearing and failure to attend in person or by counsel may result in relief being granted or denied upon default. The Hearing may be adjourned from time to time without any further notice except for an announcement at the Hearing.

Dated: New York, New York     WINDELS MARX LANE & MITTENDORF, LLP
       February 10, 2020          *Attorneys for Interim Chapter 7 Trustee*

               By:     */s/ Leslie S. Barr*_____
                          Leslie S. Barr (lbarr@windelsmarx.com)
                          156 West 56th Street
                          New York, New York 10019
                          Tel. (212) 237-1000 / Fax. (212) 262-1215

Hearing Date: February 25, 2020 at 10:00 a.m.
Objections Due: February 18, 2020 at 5:00 p.m.

WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Alan Nisselson, Chapter 7 Trustee*
156 West 56th Street
New York, New York 10019
Telephone (212) 237-1000
Attorneys Appearing: Alan Nisselson (anisselson@windelsmarx.com)
        Leslie S. Barr (lbarr@windelsmarx.com)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------- x
In re                :
                   : Chapter 7
                   :
HELIOS AND MATHESON ANALYTICS : Case Nos. 20-10242 through 20-10244-smb
INC., *et al.*,            :
                   : (Motion for Joint Administration Pending)
                   :
       Debtors.          :
----------------------------------------------------------- x

**TRUSTEE'S APPLICATION FOR AN ORDER AUTHORIZING THE TRUSTEE TO EMPLOY AND RETAIN CASSEL SALPETER & CO., LLC AS FINANCIAL ADVISOR FOR THE TRUSTEE AS OF FEBRUARY 5, 2020**

    Alan Nisselson ("***Trustee***") as Trustee for the chapter 7 estates of *Helios and Matheson Analytics, Inc.*, Case No. 20-10242-smb, *Zone Technologies, Inc.*, Case No. 20-10243-smb, and *MoviePass, Inc.*, Case No. 20-10244 (each a "***Debtor***" and collectively, the "***Debtors***"), hereby applies for the entry of an order authorizing him to retain and employ Cassel Salpeter & Co., LLC ("***Cassel Salpeter***") as financial advisor to the Trustee as of February 5, 2020. In support of this Application, the Trustee has filed the declaration of disinterestedness of James Cassel, Chairman of Cassel ("***Cassel Declaration***"), attached as **Exhibit "A"**.

**Jurisdiction; Venue; Statutory Bases for Relief**

    1.  This Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* of the United States District Court for

{11780848:3}

the Southern District of New York dated January 31, 2012 (Preska, C.J.). This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 327(a), 328(a) and 330 of title 11 of the United States Code (the "***Bankruptcy Code***"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").

### Relief Requested

3. By this Application, the Trustee request the entry of an Order substantially in the form attached as **Exhibit "B"** (the "***Retention Order***") authorizing the Trustee to employ and retain Cassel Salpeter as financial advisor to the Trustee, in accordance with the terms and conditions set forth in that certain engagement letter titled "Financial Advisory Agreement" dated February 5, 2020 (the "***Engagement Letter***"), effective as of the date of the Engagement Letter, and attached as Exhibit 1 to the Retention Order.

### Background

4. On January 28, 2020 (the "***Petition Date***"), the Debtors filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code, by their attorneys, Togut, Segal & Segal LLP.

5. Thereafter, pursuant to Bankruptcy Code § 701(a), the Office of the United States Trustee (the "***U.S. Trustee***") appointed Alan Nisselson as interim trustee in Debtors' cases.

6. Motions for the joint administration and procedural consolidation of the Debtors' Chapter 7 cases are pending for Court approval.

7. Prior to the Petition Date, the Debtors provided high quality information technology services and solutions, including a range of technology platforms focusing on big data, business intelligence, and consumer-centric technology, grouped into three business

segments: (i) Subscription and Marketing, (ii) Promotional Services and Films, and (iii) Consulting and Technology.

## Facts Specific to the Relief Requested

**A. Qualifications.**

8. In light of the size and complexity of these chapter 7 cases and the nature of the assets of each of the Debtors required to be liquidated, the Trustee requires a qualified and experienced financial advisor with the resources, capabilities and experience of Cassel Salpeter to assist him in pursuing transaction(s) that will yield the most money for assets of the Debtors' estates on an efficient and cost-effective basis.

9. Cassel Salpeter is well-qualified to serve as the Trustee's financial advisor. As described in the Cassel Declaration, Cassel Salpeter has extensive experience and an excellent reputation in providing high quality investment banking services in financially distressed situations, including advising debtors, creditors and other constituents in bankruptcy cases and out-of-court restructurings. Moreover, before the Petition Date, the Debtors retained Cassel Salpeter to be their investment banker in anticipation of filing Chapter 11 reorganization cases. That agreement has since been terminated. In that regard, Cassel Salpeter has already established a virtual data room containing important information about the Debtors' assets and has contacted a number of interested parties regarding the acquisition of Debtors' assets. As such, Cassel Salpeter is familiar with the Debtors' assets, had begun to market these assets for sale prior to the commencement of these cases under chapter 7 of the Bankruptcy Code, and is well qualified to be retained as the Trustee's financial advisor.

10. Cassel Salpeter is a leading independent investment banking advisory firm. Cassel Salpeter's investment banking business includes its advisory business, which provides a range of financial advisory services to domestic and multinational corporations on mergers and

acquisitions, divestitures, special committee assignments, recapitalizations, restructurings, and other strategic transactions.

11. Cassel Salpeter and its professionals have assisted and advised numerous financially troubled companies from a variety of industries in complex financial restructurings, both out-of-court and in chapter 11 cases.

12. Cassel Salpeter's professionals are providing or have provided investment banking and other services in connection with the restructuring or sale of the following companies: Achaogen, Inc. (OTCPK:AKAO.Q); Avadel Specialty Pharmaceuticals, LLC; 1 Global Capital LLC; Sancilio Pharmaceuticals Company, Inc.; NephroGenex, Inc. (Nasdaq:NRX); Dynavox, Inc. (OTCPK:DVOX.Q); Gulfstream International Airlines; Electrolytic Technologies Corporation; Brijot Millimeter Wave Technologies, Corp.; HeathStar Communications, Inc.; HC Innovations, Inc.; Stant Corp.; AFP Imaging Corp.; Nailite International, Inc.; OMI Medical Imaging; Nitram, Inc.; and uniDigital, Inc. Cassel Salpeter's professionals are also providing or have provided mergers and acquisitions advisory services in connection with whole or partial company sale transactions involving companies across a wide range of industries.

B. **Prepetition Services.**

13. The Trustee understands that Cassel Salpeter was retained by the Debtors pursuant to an engagement letter with the Debtors (the "***Prepetition Engagement Letter***"),[1] through which Cassel Salpeter acquired significant knowledge of the Debtors and their businesses, and became intimately familiar with the Debtors' financial affairs, business operations, capital structure, key stakeholders, and other related material information. In providing prepetition services to the Debtors, Cassel Salpeter worked closely with the Debtors'

---

[1] A copy of the Prepetition Engagement Letter will be made available upon request.

{11780848:3} 4

senior management and their other advisors. Cassel Salpeter's professionals had advised the Debtors in connection with a sales process.

14.     As a result of the prepetition work performed on behalf of the Debtors and the significant knowledge gained thereby, Cassel Salpeter developed relevant experience and expertise regarding the Debtors' assets that (i) makes Cassel Salpeter a natural selection as the Trustee's financial advisor, and (ii) will allow Cassel Salpeter to provide effective and efficient services to the Trustee in these cases.

**C.     Services to Be Provided.**

15.     The terms and conditions of the Engagement Letter (Exhibit 1 to the Retention Order) were negotiated at arm's length and in good faith, and reflect the Trustee's and Cassel Salpeter's mutual agreement as to the substantial efforts that will be required in this engagement. Under the Engagement Letter, in consideration for the compensation it contemplates, Cassel Salpeter has agreed to provide the following financial advisory services to the Trustee.[2]

16.     Cassel Salpeter will act as the Trustee's financial advisor with respect to the matters listed below and may perform such services as it deems reasonably necessary:

- a) Using commercially reasonable efforts to locate potential purchasers of the Company's assets;

- b) Reviewing and analyzing the Company's business and operations;

- c) Assisting the Trustee in identifying and evaluating candidates for any potential Sale Transaction;

- d) Advising the Trustee in connection with negotiations, and aiding in the consummation of any such Sale Transaction;

---

[2] The summaries provided in this Application are included for convenience only. In the event of any inconsistency between any summary and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control. Capitalized terms used but not otherwise defined in the summaries of the Engagement Letter contained herein shall have the meanings ascribed to such terms in the Engagement Letter.

{11780848:3}                                                5

      e) Attending meetings with the Trustee (whether in person or telephonically) with respect to matters on which we have been engaged to advise hereunder; and

      f) Providing testimony, as necessary, with respect to matters on which we have been engaged to advise hereunder in any proceeding before the Bankruptcy Court.

17. If the Trustee requests that Cassel Salpeter perform services not contemplated by the Engagement Letter, Cassel Salpeter and the Trustee will agree, in writing, on the terms for such services and seek the Court's approval thereof.

**D.   No Duplication of Services.**

18. The services that Cassel Salpeter will provide to the Trustee are necessary to enable the Trustee to maximize the value of the Debtors' estates. The services of Cassel Salpeter, as financial advisor, complement the services provided by the Trustee's other professionals. Cassel Salpeter will work with the Trustee in attempting to avoid any unnecessary duplication of the services that other professionals will be providing to the Trustee in these cases.

**E.   Professional Compensation.**

19. In consideration of the services to be provided by Cassel Salpeter, and as more fully described in the Engagement Letter, subject to the Court's approval, the Trustee has agreed to pay Cassel Salpeter the proposed compensation set forth in the Engagement Letter (the "***Fee and Expense Structure***"):

    (a) **Sale Transaction Fee.** If the Trustee consummates a Sale Transaction, the Trustee shall pay to Cassel Salpeter a sale transaction fee (the "***Sale Transaction Fee***"), payable by check or wire transfer in immediately available U.S. funds at the closing of the Sale Transaction, equal to the sum of (i) 10% of the Sale Consideration (as defined in Exhibit 1 to the Retention Order) up to $1 million; (ii) 7.5% of the Sale Consideration in excess of $1 million up to $2 million; and (iii) 5% of the Sale Consideration in excess of $2 million.  Notwithstanding

{11780848:3}                                                      6

the foregoing, in the event any Sale Transaction(s) includes deferred and/or contingent payment(s), the Trustee shall pay to Cassel Salpeter the portion of any Sale Transaction Fee relating thereto, payable in cash by check or wire transfer in immediately available U.S. funds, if and when such deferred and/or contingent payment(s) is actually paid. Notwithstanding anything contained in the Engagement Letter to the contrary, the Trustee may approve or elect not to proceed with a Sale Transaction and/or to abandon any of the Debtors' assets in his sole and absolute discretion.

(b) **Multiple Closings.** If more than one Sale Transaction is consummated, Cassel Salpeter shall be compensated based on the aggregate Consideration of all Sale Transactions, calculated in the manner set forth above.

(c) **Fee Obligation**. Cassel Salpeter shall be entitled to the fees set forth in the paragraph above if any Sale Transaction is consummated during the Term, or within two (2) years after the date of any termination or expiration of the Engagement Letter (the "*Tail Period*"), or the Trustee enters into any definitive agreement regarding a Sale Transaction during the Term or the Tail Period that subsequently closes (whether during or after the Tail Period), provided the buyer is or becomes known to the Trustee during the Term of the Engagement Letter.

(d) **Reasonableness.** The parties acknowledge that this engagement will require a substantial professional commitment of time and effort by Cassel Salpeter. Moreover, the amount of time and effort may vary substantially during different periods of this engagement. As a result, in order to ensure the availability of all necessary professional resources, whenever required, Cassel Salpeter may be foreclosed from pursuing other alternative engagement opportunities. In light of the foregoing, the parties agree that the fee arrangement provided for

{11780848:3}   7

herein is reasonable and fairly compensates Cassel Salpeter. All fees due to Cassel Salpeter as set forth in this Paragraph and the above and below Paragraphs shall not be subject to offsets, are non-refundable and non-cancelable. No fee payable to any third party, by the Debtor or Trustee or any other person or entity, shall reduce or otherwise affect any fee payable hereunder to Cassel Salpeter.

20. **Reimbursement of Expenses.** The Trustee shall promptly reimburse Cassel Salpeter, upon request, for all reasonable out-of-pocket expenses incurred by Cassel Salpeter in connection with the Engagement Letter or the performance thereof, whether or not any Sale Transaction or other type of transaction is consummated, including, but not limited to, travel and lodging, databases, fees and disbursements of Cassel Salpeter's counsel, and any other consultants and advisors retained by Cassel Salpeter, provided the payment of such expenses shall be subject to the approval of the Bankruptcy Court. All fees and reimbursable expenses due to Cassel Salpeter shall have no offsets, are non-refundable and non-cancelable.

21. The Trustee believes that the Fee and Expense Structure as set forth above is reasonable and comparable to those generally charged by financial advisors of similar stature to Cassel Salpeter for comparable engagements, both in and out of bankruptcy. The Trustee also submits that the Fee and Expense Structure reflects the advantages of no fixed monthly fee and a reasonable contingency amount tied to the (i) consummation and closing of transactions and (ii) services contemplated by the Trustee and Cassel Salpeter in the Engagement Letter.

22. The Fee and Expense Structure summarized above and described more fully in the Engagement Letter is consistent with Cassel Salpeter's normal and customary billing practices for comparably sized and complex cases and transactions, both in and out-of-court.

23. The Fee and Expense Structure was agreed to in anticipation that a substantial commitment of professional time and effort will be required of Cassel Salpeter and its professionals and in light of the fact that (i) such commitment may foreclose other opportunities for Cassel Salpeter and (ii) the actual time and commitment required of Cassel Salpeter and its professionals to perform its services may vary substantially from week to week and month to month, creating "peak load" issues for Cassel Salpeter.

24. The Fee and Expense Structure further anticipates (i) the myriad issues that Cassel Salpeter may be required to address in the performance of its services pursuant to the Engagement Letter, (ii) Cassel Salpeter's commitment to the variable level of time and effort necessary to address all such issues, and (iii) the market prices for Cassel Salpeter's services for engagements of this nature in both the in-court and out-of-court contexts. The Trustee therefore submits that the Fee and Expense Structure is fair and reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

25. Cassel Salpeter has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code. No promises have been received by Cassel Salpeter as to compensation in connection with these cases, other than as outlined in the Engagement Letter.

**F.    Record Keeping and Application(s) for Compensation.**

26. It is not the general practice of a financial advisory firm such as Cassel Salpeter to keep detailed time records similar to those customarily kept by attorneys. Since Cassel Salpeter's compensation is on a contingency basis and is tied to success of sale transaction(s), time records should be unnecessary to determine the extent of compensation due Cassel Salpeter.

{11780848:3}    9

Accordingly, it is respectfully requested that Cassel Salpeter should be excused from compliance with such requirements.

**G.     Indemnification Provision.**

27.     Among the terms and conditions in the Engagement Letter is an indemnity for the benefit of Cassel Salpeter and certain other Indemnified Persons as defined in the Engagement Letter (the "*Indemnity Provision*").  The Indemnity Provision is a reasonable term and condition of Cassel Salpeter's engagement.  Bankers and financial advisors rely heavily on information provided by debtors in making contacts with potential lenders, investors, buyers, or other parties to potential transactions.  It is customary, for this reason, that investment bankers or financial advisors receive indemnification from the entities for whom they work.  The Engagement Letter includes the Indemnity Provision, which is customary in scope.  The Engagement Letter makes clear that no indemnification is available for losses that are determined, by a final judicial determination, to have resulted from Cassel Salpeter's gross negligence or willful misconduct.

28.     Unlike the market for other professionals that a debtor or Trustee may retain, indemnification is a standard term of the market for investment bankers and financial advisors. The Indemnity Provision is comparable to those generally obtained by financial advisory and investment banking firms of similar stature to Cassel Salpeter and for comparable engagements in this district and other jurisdictions.

29.     The Trustee respectfully submits that the indemnification, contribution, exculpation, reimbursement and other provisions contained in the Engagement Letter, viewed in conjunction with the other terms of Cassel Salpeter's proposed retention, are reasonable and in the best interests of the Debtor and all other stakeholders.

30.     Accordingly, as part of this Application, the Trustee requests that the Court approve the Engagement Letter.

**H.     Disinterestedness**

31.     To the best of the Trustee's knowledge, information, and belief, and except to the extent disclosed in the Cassel Declaration, (i) Cassel Salpeter is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates; and (ii) Cassel Salpeter has no connection to the Debtors, their creditors, equity holders, or other parties-in-interest.

32.     The Trustee understands that in connection with Cassel Salpeter's engagement with the Debtors pursuant to the Prepetition Engagement Letter, the Debtors were obligated to pay Cassel Salpeter certain monthly fees. During the 90 days immediately preceding the Petition Date, Cassel Salpeter received the following payments in connection with Cassel Salpeter's prepetition engagement: Four Monthly Fees of $25,000.00 each, totaling $100,000.00, plus expense reimbursement payments of $3,259.57.

33.     As of the Petition Date, neither the Debtors nor the Trustee owe Cassel Salpeter for any fees or expenses incurred prior to or after the Petition Date.

34.     Cassel Salpeter will periodically review its files during the pendency of these cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new, relevant facts or relationships are discovered or arise, Cassel Salpeter will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

{11780848:3}                                                    11

## Basis for Relief

**The Trustee's Retention and Employment of Cassel Salpeter is Appropriate Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014.**

35. The Trustee seeks authority to employ and retain Cassel Salpeter as his financial advisor under section 327(a) of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title."

36. The Trustee seeks approval of the Engagement Letter pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." Accordingly, section 328(a) of the Bankruptcy Code permits the compensation of professionals on flexible terms that reflect the nature of their services and market conditions. Thus, section 328 is a significant departure from prior bankruptcy practice relating to the compensation of professionals. Indeed, as the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Securities Corp.* v. *National Gypsum (In re National Gypsum Co.)*, 123 F.3d 861, 862 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee) (internal citations omitted).

37. Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 328(a) of the Bankruptcy Code to read as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.

This change makes clear that a trustee may retain a professional on a fixed or percentage fee basis with Court approval, such as the Fee and Expense Structure and Indemnification for Cassel Salpeter in the Engagement Letter.

38. The Trustee believes that the Fee and Expense Structure and Indemnification set forth in the Engagement Letter set forth reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. The Fee and Expense Structure and Indemnification adequately reflect (a) the nature of the services to be provided by Cassel Salpeter and (b) fee and expense structures typically utilized by Cassel Salpeter and other leading financial advisory firms, which do not bill their time on an hourly basis and generally are compensated on a transactional basis.

## Notice

39. Notice of this Application has been provided to the following parties, or, in lieu thereof, their counsel: (a) the United States Trustee; (b) the Internal Revenue Service; (c) the Securities Exchange Commission; (d) the Federal Trade Commission; and (e) the parties identified on the Debtors' lists of 20 largest unsecured creditors; and (f) all parties who filed notices of appearance. Upon information and belief, most of the Debtor's creditors, over 12,000, hold claims related to Movie Pass subscriptions and are generally less than $150.00 for each claimant. In light of the nature of the relief requested, the Trustee respectfully submits that no other or further notice need be provided.

**No Prior Request**

40. The Trustee has not previously sought the relief requested herein from this or any other court.

**Conclusion**

**WHEREFORE**, the Trustee respectfully request this Court enter an order, substantially in the form attached as Exhibit "B," granting the relief requested in this Application, and such other and further relief as may be just and proper.

Dated: New York, New York
       February 10, 2020

Respectfully submitted,

WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Alan Nisselson, Trustee*

By: /s/ Alan Nisselson
    Alan Nisselson (anisselson@windelsmarx.com)
    Leslie S. Barr (lbarr@windelsmarx.com)
    156 West 56th Street
    New York, New York 10019
    Tel. (212) 237-1000