**Motion Hearing Date: February 25, 2020 at 10:00 a.m.**
**Deadline to File Objections: February 21, 2020 at 5:00 p.m.**

WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Alan Nisselson, Chapter 7 Trustee*
156 West 56th Street
New York, New York 10019
Telephone: (212) 237-1000
Attorney appearing:   Alan Nisselson (anisselson@windelsmarx.com)
                     Leslie S. Barr (lbarr@windelsmarx.com)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
In re                                                        :
                                                             :   Chapter 7
                                                             :
HELIOS AND MATHESON ANALYTICS                                :   Case Nos. 20-10242-smb
INC., *et al.*,[1]                                           :
                                                             :   (Jointly Administered)
                                                             :
                                    Debtors.                 :
------------------------------------------------------------ x

**TRUSTEE'S MOTION FOR ORDER: (A) APPROVING SALE PROCEDURES
TO BE UTILIZED BY TRUSTEE'S FINANCIAL ADVISOR; (B) SETTING DATE
FOR SALE(S) APPROVAL HEARING; (C) APPROVING THE FORM AND MANNER
OF NOTICE; AND (D) GRANTING OTHER RELATED RELIEF**

**TO THE HONORABLE STUART M. BERNSTEIN,
UNITED STATES BANKRUPTCY JUDGE:**

Alan Nisselson ("***Trustee***"), interim trustee for the Chapter 7 estates ("**Estates**") of Helios and Matheson Analytics Inc., a/k/a MovieFone, Case No. 20-10242-smb, Zone Technologies, Inc., a/k/a Red Zone, a/k/a Zone Intelligence**,** Case No. 20-10243-smb, and MoviePass, Inc., Case No. 20-10244-smb (collectively, "***Debtors***"), by his attorneys, Windels Marx Lane & Mittendorf, LLP, respectfully files this motion (the "***Motion***") for an order substantially in the form attached to this Motion as **Exhibit "A"** ("*Sale Procedures Order*") (a)

---

[1] The Debtors in the jointly administered Chapter 7 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Helios and Matheson Analytics, Inc., a/k/a MovieFone (9913), Zone Technologies, Inc., a/k/a Red Zone, a/k/a Zone Intelligence, (5124), and MoviePass, Inc. (9893).

approving sale procedures to be utilized by the Trustee's financial advisor to sell certain of the Debtors' assets; (b) setting a date for a sale(s) approval hearing; (c) approving the form and manner of notice substantially in the form attached as **Exhibit "B"** ("*Notice*"); and (d) granting other related relief.  In support of this Motion, the Trustee has filed his Declaration attached as **Exhibit "C"**, states as follows:

### I.    Jurisdiction; Venue; Statutory Bases for Relief Requested.

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C §§ 157 and 1334 and the Amended Standing Order of Reference of the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C § 157(b).  Venue of this case and proceeding is proper in this district pursuant to 28 U.S.C §§ 1408 and 1409.  The relief sought in this Motion is based upon sections 105(a) and 363(b)(1), (f) and (m) of title 11, United States Code, 11 U.S.C. §§ 101 et seq. ("*Bankruptcy Code*"), Rules 2002, 6004, 9006(c), and 9007 of the Federal Rules of Bankruptcy Procedure ("*Bankruptcy Rules*"), Rule 6004-1(a) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York ("*Local Rules*"), and the Court's General Order M-383 signed on November 18, 2009 titled *In the Matter of the Adoption of Amended Guidelines for the Conduct of Asset Sales*.

### II.    Background.

2. On January 28, 2020 (the "*Petition Date*"), the Debtors filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code, by their attorneys, Togut, Segal & Segal LLP.

3. Thereafter, pursuant to Bankruptcy Code § 701(a), the Office of the United States Trustee (the "*U.S. Trustee*") appointed Alan Nisselson as interim trustee in Debtors' cases.

4. Motions for the joint administration and procedural consolidation of the Debtors' Chapter 7 cases are pending for Court approval.

5.     The Trustee has selected Cassel Salpeter & Co., LLC ("*Cassel Salpeter*") as his financial advisor, and has filed an application to retain Cassel Salpeter as his financial advisor nunc pro tunc to February 5, 2020.  Before the Petition Date, the Debtors retained Cassel Salpeter as their investment banker.  Cassel Salpeter is fully familiar with Debtors' assets, having already established a virtual data room containing relevant documents about Debtors' assets, financial affairs, and business operations.  Cassel Salpeter's professionals also worked closely with Debtors' senior management in identifying potential purchasers of the Debtors' assets, and contacted many of the potential purchasers to assess their interest in purchasing Debtors' assets prior to filing of the Chapter 7 cases.

### III.     The Debtors' Businesses and Assets for Sale

6.     Prior to the Petition Date, the Debtors provided high quality information technology services and solutions, including a range of technology platforms focusing on big data, business intelligence, and consumer-centric technology, grouped into three business segments: (i) Subscription and Marketing, (ii) Promotional Services and Films, and (iii) Consulting and Technology.

7.     Cassel Salpeter has identified several of the Debtors' assets ("*Assets*") for immediate sale:

(a)     Moviefone. Moviefone is an entertainment information and marketing service which provides its users with access to the entire entertainment ecosystem.  Moviefone delivers movie show times, trailers, TV schedules, streaming information, cast and crew interviews, photo galleries and more.  Moviefone's editorial coverage includes up-to-date entertainment news, trailers and clips, red-carpet coverage and celebrity features.  Moviefone has ticket-selling technology that is in late-stage development.  Moviefone's primary source of revenue is through advertising.

{11780947:4}                                                    3

(b) Zone Technologies. Zone Technologies, Inc., a mapping and spatial analysis company, is the developer of the proprietary RedZone Map™, a GPS-driven, real-time crime and navigation map application whose goal is to enhance personal safety worldwide by providing users with real time crime data and a platform for alerting other users to criminal and other safety related occurrences in a navigation map format. Zone Technologies' mapping lets users be proactive when traveling, allowing them to enter several different cautionary items such as traffic problems, police sightings, road hazards, accidents and road closures. It also allows users to report a crime and to video upload live incidents.

(c) Tact.com. Tact.com is a registered domain owned by one of the Debtors.

(d) Consulting business. The consulting business provides high quality information technology services and solutions including a range of technology platforms focusing on big data, business intelligence, and consumer-centric technology. This segment of the business has one client, one employee, and nine contractors currently working on active assignments. In addition, the consulting operation licenses software that facilitates data management on IBM mainframe environments to several clients.

8. The Assets will be sold for all cash and on an "as is", "where is" basis, without any representations or warranties of any kind or nature whatsoever, and subject to all faults, known or unknown, and free and clear of any and all liens, claims interests, and encumbrances ("*Encumbrances*"), with any such Encumbrances to attach to the proceeds of sales, in the order of priority they may have, and subject to any defenses under applicable law or in equity.

9. The Trustee might seek to sell other Assets of the Debtors in the future, and the Trustee may request Court approval of procedures for those asset sales in a future motion.

### IV.   Summary of Sale Procedures to be Utilized by Cassel Salpeter

10.   **Data Room.**  As stated above, Cassel Salpeter has established a virtual data room containing descriptive and important documents related to some of the Assets described above. For each party identified by Cassel Salpeter as being interested in purchasing any of the Assets, Cassel Salpeter will provide access to the appropriate content in the data room, provided that each potential purchaser first executes and delivers a non-disclosure agreement prior to obtaining access to the Data Room.

11.   **Marketing.**  Cassel Salpeter has reengaged with and is seeking additional potential purchasers for the Assets.  In that regard, before the Petition Date, Cassel Salpeter compiled a potential bidder list from a few different sources.  One source was from Helios and Matheson management, who forwarded any inbound interest they received before and during Cassel Salpeter's prepetition engagement.  The inbound interest Helios and Matheson received was a result of the former CEO, Ted Farnsworth, stating publicly he was going to try to buy certain assets of the Debtor.  A majority of the potential bidders were identified using databases Cassel Salpeter subscribes to.  The list of potential bidders Cassel Salpeter identified using its databases was reviewed and refined by Helios and Matheson management.  The last source of potential bidders came from inbound emails to Cassel Salpeter during the prepetition marketing process. Cassel Salpeter identified approximately 75 parties, all of which had some level of expertise in the movie, media, and technology space or have expressed interest in acquiring distressed assets. These marketing efforts have continued after the Petition Date.

12.   **Auction.**  Cassel Salpeter will schedule and give notice of one or more Auction sales of the Assets, commencing no sooner than 21 days after the Court has approved these sale procedures.  The Auction sale(s) will take place by telephone and Cassel Salpeter will supply all instructions regarding the conduct of the Auction Sale(s).  The Assets will be sold separately

rather than in a single lot.  The following Auction terms shall be utilized:

(a) The Assets will be sold "as is", "where is", without any representation or warranty whatsoever, free and clear of all Encumbrances, for cash only, and subject to higher or better offers, to be selected by the Trustee in his sole discretion, and subject to Bankruptcy Court approval.

(b) Prior to the commencement of each Asset Auction, every bidder must deposit with the Trustee funds in an amount equal to 10% of the bidder's initial bid, which must be equal to or greater than the minimum bid amount set by Trustee for the Asset to be auctioned.

(c) In addition, prior to the commencement of each Asset Auction, each bidder will be required to execute a sale agreement acceptable to the Trustee (a form of sale agreement will be provided by the Trustee).

(d) A sale approval hearing will be scheduled with the Court, at which the Trustee shall request the Court enter an Order approving each winning bid for the Assets ("***Sale Approval Order***").  The Trustee will request the Court fix a date for the sale approval hearing about three days following the Auction Sale(s), subject to the Court's convenience.

(e) Each winning bidder shall be required to close on the sale transaction no later than 15 days after a Sale Approval Order is entered or within 48 hours of entry of the Sale Approval Order if the Court waives the requirements of Bankruptcy Rule 6004(h).

(f) Cassel Salpeter and the Trustee reserve the right to alter, modify and amend any procedures used to conduct the Auction sale(s).

### V.    Sale under Section 363(b)(1).

13. The Trustee's proposed sale of the Assets by Auction sales after marketing and solicitation of potential purchasers meets the requirements of the Bankruptcy Code and the standards for approval of asset sales under the applicable rules and General Order M-383 of this

{11780947:4}                                        6

Court, *Amended Guidelines for the Conduct of Asset Sales*. Bankruptcy Code § 704, titled "Duties of a Trustee", states as follows:

> (a) The trustee shall –
>> (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interest of parties in interest;

11 U.S.C. § 704(a)(1). The Assets constitute property of the Debtors' Estates under Bankruptcy Code § 541(a)(1) that the Trustee may use, sell or lease under Bankruptcy Code § 363. Bankruptcy Code § 363(b)(1) provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Bankruptcy Code § 105(a) provides in relevant part: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

### VI. A Sound Business Reason Exists for the Sale.

14. In accordance with these well-established standards, the immediate consummation of the sales of the Assets is demonstrably the best way to maximize the value of these assets. By separate motion, the Trustee has requested authority to operate certain of Debtors' Assets for a limited time to preserve their value. As noted in that motion, several of the Assets are "wasting assets" and the expedited consummation of a sale(s) is required to achieve the maximum amount of value for the Assets. If the sale procedures set above or similar procedures are not approved, the Trustee will not be able to achieve the anticipated values for the Assets. The Trustee believes these facts support a finding that a sound business reason exists for the approval of these Auction sales.

### VII. Sale Free and Clear Under Section 363(f).

15. Bankruptcy Code § 363(f) provides:

> The trustee may sell property under subsection (b) or (c) of this section

>free and clear of any interest in such property of an entity other than the estate, only if
>
>>(1)  applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>>
>>(2)  such entity consents;
>>
>>(3)  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>>
>>(4)  such interest is in bona fide dispute; or
>>
>>(5)  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Section 363(f) is written in the disjunctive. Thus, satisfaction of any of the five conditions is sufficient to sell property free and clear of liens. *In re Elliott*, 94 B.R. 343, 345 (Bankr. E.D. Pa 1988); *In re Red Oak Farms, Inc.*, 36 B.R. 856, 858 (Bankr. W.D. Mo. 1984).

16.  To the best of the Trustee's knowledge, information and belief, there are no existing perfected Encumbrances upon the Assets. However, to the extent that any Encumbrances may exist, the Sale Approval Order will provide that the Assets will be sold free of such Encumbrances and that they will attach to the net proceeds of the sale, with the validity, enforceability and priority that they had before the Petition Date, and subject to any claim and defense that the Trustee on behalf of the Debtors' Estates may possess. The Trustee accordingly requests that the Assets be sold to the successful bidders making the highest or best offers that the Trustee has accepted at the Auctions, and the Court has approved (an "**Accepted Bid**"), free and clear of all Encumbrances, with such Encumbrances to attach to the proceeds of the proposed sale to the extent and in the priority in which they existed before the sale.

### VIII.  Good Faith Under Section 363(m).

17.  Bankruptcy Code § 363(m) provides:

>The reversal or modification on appeal of an authorization under

> subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith", the Second Circuit has held that:

> the good-faith analysis is focused on the purchaser's conduct in the course of the bankruptcy proceedings. This includes the purchaser's actions in preparation for and during the sale itself. That is, the good-faith requirement prohibits fraudulent, collusive actions specifically intended to affect the sale price or control the outcome of the sale.

*Licensing by Paolo, Inc. v. Sinatra (In re Gucci, Inc.)*, 126 F.3d 380, 390 (2d Cir. 1997). The Trustee submits that any party making an Accepted Bid will have acted in good faith under the *Gucci* standards and accordingly, requests that the Court make a factual determination at the Sale Approval Hearing (defined below) that any party making an Accepted Bid has purchased the Assets in good faith as defined in Bankruptcy Code § 363(m).

18. In addition, the conveyance of the Estates' interests in the Assets at the Auction sales subject to competing bids serves the best interests of all creditors because it will represent the highest value and the Estates' best opportunity to maximize that value of the Assets.

### IX. Extraordinary Sale Provisions.

19. This motion requesting approval of the proposed Sale Procedures Order does not significantly involve Extraordinary Provisions and complies fully with the Court's *Amended Guidelines for the Conduct of Asset Sales*. However, in the interests of full disclosure, the Trustee states that with respect to the use of proceeds, other than paying costs of administration, the Trustee will hold the sale proceeds in his account(s) for these Estates pending further Court order.

### X. The Notice of Auction Sales and Sale Approval Hearing.

20. The Trustee requests the entry of the proposed Sale Procedures Order attached as Exhibit "A" on an expedited basis approving the sale procedures set forth above, scheduling a hearing to confirm the Accepted Bids, and approving the form and manner of notice. As set forth in the attached declaration of the Trustee, the Assets are wasting assets; for several of these assets the Trustee has requested authority to operate for a limited time to preserve their value. The terms and conditions of the Auction sales set forth above provide that Cassel Salpeter will schedule the Auction sales after solicitation of parties interested in bidding for the Assets. The Trustee anticipates that the Auctions will have be conducted on March 16, 2020, and therefore requests that the Court fix a hearing date to consider the approval of the Auctions sales on March 19, 2020 ("*Sale Approval Hearing*").

21. Bankruptcy Rule 2002 requires that 21 days' notice plus three days for service by mail be given of a hearing to consider the sale of assets. The Trustee respectfully requests notice of the hearing on this Motion for entry of the Sale Procedures Order be limited and be given on reduced notice. Since the Trustee is requesting a hearing on this Motion be held on February 25, 2020, the same hearing date that the Court has scheduled for other motions and applications in these cases, the Trustee respectfully requests that the Court enter an Order Scheduling Hearing authorizing and approving notice of the Motion and the Hearing on the Motion shall be given by serving a copy of the Order Scheduling Hearing, the Motion, and all exhibits thereto via facsimile, email, or overnight or hand delivery, on or before February __, 2020 at 9:00 p.m. prevailing Eastern time, on (i) the Office of the U.S. Trustee, (ii) Debtors' counsel, (iii) all taxing authorities, (iv) the following federal governmental agencies: the United States Department of Justice, the United States Securities and Exchange Commission, and the Federal Trade Commission; (v) the 20 largest unsecured creditors of each Debtor, (vi) parties filing notices of

appearance, and (vii) parties known to the Trustee to have expressed an interest in acquiring the Assets, to the extent that their contact information is known or available. Given the circumstances described in the declaration of the Trustee and above, the Trustee respectfully submits that such notice is reasonable, adequate and sufficient and satisfies the applicable Bankruptcy Rules, Local Bankruptcy Rules and *Amended Guidelines for the Conduct of Asset Sales*.

22. In addition to the substantial marketing to be conducted by Cassel Salpeter, the Trustee will provide notice by serving the Notice of the Auction Sales and procedures in the form attached as Exhibit "B", which provides the date, time and place of the procedures to be utilized, and the deadline for filing objections.

23. The Trustee or Kurtzman Carson Consultants, LLC ("***KCC***") (upon Court approval of the retention of KCC as claims and noticing agent in these cases) will serve the Notice of Auction Sales by regular mail, electronic mail, facsimile or overnight or hand delivery within two days of entry of the Sale Procedures Order upon the following parties: (i) the Office of the U.S. Trustee, (ii) Debtors' counsel, (iii) all taxing authorities, (iv) the following federal governmental agencies: the United States Department of Justice, the United States Securities and Exchange Commission and the Federal Trade Commission; (v) the 20 largest creditors, (vi) parties filing notices of appearance, and (vii) parties known to the Trustee to have expressed an interest in acquiring the Assets, to the extent that their contact information is known or available. Upon the Court's approval of the retention of KCC as claims and noticing agents in these cases, KCC shall serve notice to all creditors who were not given notice as set forth above, and will also give email notification to the creditors for whom the Debtors have provided only email

addresses.[2]

24. The Trustee submits that the foregoing notice fully complies with the requirements set forth in Bankruptcy Rules 2002, 6004, 9006(c) and 9007, Local Bankruptcy Rule 9006-1(b) and the Court's *Amended Guidelines for the Conduct of Asset Sales*. The Trustee respectfully requests that this Court approve the form and manner of the notice proposed above.

## XI. No Prior Request; Conclusion.

25. No prior motion for the relief sought herein has been made to this or any other court, except as otherwise described above.

**WHEREFORE**, the Trustee requests that the Court enter a Sale Procedures Order substantially in the form attached as **Exhibit "C"** granting this Motion, and grant such other and further relief as is just.

Dated: New York, New York
February 10, 2020

Respectfully submitted,

WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Alan Nisselson, Trustee*

By:   */s/ Leslie S. Barr*_____
Alan Nisselson (anisselson@windelsmarx.com)
Leslie S. Barr (lbarr@windelsmarx.com)
156 West 56th Street
New York, New York 10019
Tel. (212) 237-1000 / Fax. (212) 262-1215

---

[2] About 12,000 creditors of the Debtors were listed in the bankruptcy schedules with only email addresses and no postal addresses.

{11780947:4}    12

## Index of Exhibits to Motion

| | |
|---|---|
| Exhibit A | Sale Procedures Order |
| Exhibit B | Notice of Auction Sales and Sale Approval Hearing |
| Exhibit C | Declaration of Alan Nisselson |