UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                          Chapter 7

HELIOS AND MATHESON ANALYTICS,                                  Case No. 20-10242 (DSJ)
INC. *et al.*,[1]                                               (Jointly Administered)

                        Debtors.
------------------------------------------------------------x

# MEMORANDUM OF DECISION AND ORDER

**A P P E A R A N C E S :**

**TOGUT, SEGAL & SEGAL LLP**
*Counsel for Debtors.*
One Penn Plaza
New York, NY 10019
By:    Frank A. Oswald, Esq.
         Terri Jane Freedman, Esq.

**BARITZ & COLMAN LLP**
*Counsel for Madison Global Partners, LLC*
233 Broadway, Suite 2020
New York, New York 10279
By:    David Richan, Esq.
         John D. Stewart, Esq.

**WINDELS MARX LANE & MITTENDORF, LLP**
*Counsel for Alan Nisselson, Chapter 7 Trustee*
156 West 56th Street
New York, NY 10019
By:    Ben J. Kusmin, Esq.
         Leslie Barr, Esq.

**HARDWOOD REIFF LLC**
*Counsel for Silver Cinemas Acquisition Company d/b/a Landmark Theatres*
370 Lexington Avenue, Suite 505
New York, New York 10017
By:    Simon W. Reiff, Esq.

---

[1]    The Debtors in these Chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, include: Helios and Matheson Analytics, Inc., a/k/a MovieFone (9913); Zone Technologies, Inc. a/k/a Red Zone, a/k/a Zone Intelligence (5124); and MoviePass, Inc. (9893).

**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

This dispute concerns the enforceability of a liquidated damages provision contained in a contract between a theatrical movie subscription service and a movie theater chain. In essence, the contract bound the theater chain to work with the subscription service over a renewable annual contractual period and sell discounted tickets to the subscription service and / or its customers, while the contract required the subscription service to achieve contractually specified levels of ticket sales, or else to pay liquidated damages in the amount of any shortfall below the contractually required levels. The movie subscription service is a debtor in the above-referenced bankruptcy case. The estate's Chapter 7 trustee objects that the portion of the theater chain's claim that is based on the contract's liquidated damages formula is unenforceable because it is unconscionable or grossly disproportionate to the theater chain's probable economic damages in the event of a breach; the trustee argues in the alternative that the liquidated damages claim constitutes a penalty that should be subordinated to general unsecured claims.

Alan Nisselson, as Chapter 7 trustee (the "**Trustee**") for the above-captioned Chapter 7 debtors (each a "**Debtor**" and collectively the "**Debtors**"), filed an objection to Claim No. 55 (the "**Claim**") of Cohen Brothers Realty Corporation, successor-in-interest to Silver Cinemas Acquisition Company, d/b/a Landmark Theatres ("**Landmark**"), seeking to disallow and expunge a substantial portion of the Claim pursuant to 11 U.S.C. ("**Code**") § 502(b) or, alternatively, to reclassify and subordinate that portion of the Claim to fourth priority pursuant to Code Section 726(a)(4); specifically, the Objection concerns $15,585,212 of Landmark's $16,902,889.35 general unsecured claim against Debtor MoviePass, Inc. ("**MoviePass**"). [ECF No. 160 (the "**Objection**") ¶ 1]. Landmark filed an opposition to the Objection, [ECF No. 192 (the "**Opposition**")], and the Trustee filed a reply in further support of its Objection, [ECF No. 199

2

(the "**Reply**")]. In addition, Madison Global Partners, LLC ("**Madison Global**") filed a memorandum in support of the Objection. [ECF No. 200 (the "**Memorandum**")]. The Court heard argument on August 12, 2021. [ECF No. 202 ("**Transcript**")].

For the following reasons, the Court overrules the Trustee's Objection.

## BACKGROUND

### A. The Bankruptcy Case

On January 28, 2020 (the "**Petition Date**"), Helios and Matheson Analytics, Inc. a/k/a MovieFone ("**Helios**") and certain of its affiliates, including MoviePass, filed voluntary petitions for Chapter 7 relief. [*See* ECF No. 1, Chapter 7 Voluntary Petition for Non-Individuals Filing for Bankruptcy; Case No. 20-10243, ECF No. 1, Chapter 7 Voluntary Petition for Non-Individuals Filing for Bankruptcy; Case No. 20-10244, ECF No. 1, Chapter 7 Voluntary Petition for Non-Individuals Filing for Bankruptcy]. The Debtors' bankruptcy cases are procedurally consolidated and jointly administered. [*See* ECF No. 16].

Before the Petition Date, the Debtors provided IT services and solutions grouped into three business segments: Subscription and Marketing; Promotional Services and Films; and Consulting and Technology. [Obj. ¶ 5]. Debtors' Promotional Services and Films business included MoviePass, a Delaware corporation 92% owned by Helios. [*Id.*].

### B. Landmark's Claim and the Trustee's Objection

As part of its movie theater subscription service, MoviePass entered into a number of "exhibitor agreements" with movie theaters, under which MoviePass or its subscribers could purchase discounted tickets from such theaters via the MoviePass service and MoviePass was obligated to pay for such tickets. [*Id.* ¶ 6]. MoviePass and Landmark entered into such an agreement on March 21, 2018, [*id.* ¶ 7, Ex. A (the "**Agreement**")], relevant provisions of which are described below.

3

Landmark timely filed its Claim based on an asserted breach of the Agreement. [Proof of Claim at 2]. The Claim has two parts: one, which the Trustee does not dispute, arises under Section 3.2 of the Agreement (the "**3.2 Claim**"), and seeks $1,317,677.35 in payments due from MoviePass to Landmark for tickets that MoviePass and / or its customers purchased; and the second, which the Trustee does dispute, arises under Section 3.4 of the Agreement (the "**3.4 Claim**"), and seeks $15,585,212 in liquidated damages that are assertedly owed due to MoviePass's failure to achieve contractually required sales levels for movies shown at Landmark theaters. [Obj. ¶¶ 12–13]. Specifically, by its terms, the Agreement commits MoviePass to automatic renewal of the Agreement in one-year terms, and to paying Landmark any shortfall if MoviePass's sales fell below the annualized average of the final four months of the prior term. [*See* Agreement §§ 3.4 and 7].

The Trustee argues that the 3.4 Claim should be disallowed pursuant to Code Section 502(b)(1) because it provides for liquidated damages grossly disproportionate to Landmark's foreseeable loss, and is thus a penalty or is otherwise unenforceable against MoviePass under applicable New York law.[2] [Obj. ¶¶ 16–22]. Alternatively, the Trustee argues that the 3.4 Claim should be afforded a lower priority than other general secured creditors as an allowed claim for a "fine" or "penalty" pursuant to Code Section 726(a)(4). [*Id.* ¶¶ 23–30].

## DISCUSSION

### A. Applicable Law

Correctly filed proofs of claim "'constitute[] prima facie evidence of the validity [and amount] of the claim. To overcome this prima facie evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the

---

[2] The Agreement is governed by New York law pursuant to Section 18.4 thereof.

claim.'" *See In re Vivaro Corp.*, 541 B.R. 144, 153–54 (Bankr. S.D.N.Y. 2005) (quoting *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000), *aff'd*, 242 F.3d 367 (2d Cir. 2000) (internal citations omitted)). Accordingly, by presenting "'evidence equal in force to the prima facie case,'" an objector can countervail a claim's presumption of validity. *Id.* at 154 (quoting *Creamer v. Motors Liquidation Co. GUC Tr. (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013)). Such a showing by an objector shifts the burden back to the claimant to prove, by a preponderance of the evidence, that the Court should allow the claim. *See Creamer*, 2013 WL 5549643, at *3.

The Code provides, in relevant part, that a claim shall be allowed "except to the extent that . . . such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). Thus, to the extent a claim is unenforceable as a penalty under applicable New York contract law, it will be disallowed under the Code.

In Chapter 7 cases like this one, the Code also provides that "payment of any allowed claim" for "any fine, penalty, or forfeiture" shall be afforded fourth priority status "to the extent that such fine, penalty, [or] forfeiture . . . are not compensation for actual pecuniary loss suffered by" the claim holder. 11 U.S.C. § 726(a)(4).

Liquidated damages are "an estimate, made by the parties at the time they enter into their agreement, of the extent of the injury that would . . . result [from] breach of the agreement." *Honeywell Int'l Inc. v. Northshore Power Sys., LLC*, 32 Misc. 3d 1223(A), 936 N.Y.S.2d 59, 2011 WL 3198877, at *6 (N.Y. Sup. Ct., N.Y. Co. Jul. 25, 2011) (quoting *Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 424 (N.Y. 1977)), *aff'd*, 96 A.D.3d 581, 946 N.Y.S.2d 474 (1st Dep't 2012). Generally, contracting "parties are free to agree to a liquidated damages clause" unless the clause is "unconscionable" or "contrary to public policy." *Trustees of Columbia*

5

*Univ. in City of New York v. D'Agostino Supermarkets, Inc.*, 36 N.Y.3d 69, 83, 162 N.E.3d 727 (2020) (internal citations and quotation marks omitted). Such a provision "fixing damages in the event of breach" is valid "if the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation." *Honeywell*, 32 Misc. 3d 1223(A), 936 N.Y.S.2d 59, 2011 WL 3198877, at *6 (quoting *Truck Rent-A-Center*, 41 N.Y.2d at 425).

If "the amount fixed is plainly or grossly disproportionate to the probable loss, the provision" is in the nature of a "penalty" and thus will not be enforced. *JMD Holding Corp. v. Congress Fin. Corp.*, 4 N.Y.3d 373, 380, 828 N.E.2d 604, 609 (2005) (quoting *Truck Rent-A-Center*, 41 N.Y.2d at 425). The burden of demonstrating that a liquidated damages provision is an unenforceable penalty lies "on the party seeking to avoid [it]." *JMD Holding Corp.*, 4 N.Y.3d at 380.

### B. Section 3.4 of the Agreement is Valid and Therefore the 3.4 Claim is Allowed

The Agreement calls for MoviePass to have exclusive rights to provide paid subscription movie ticket services to Landmark's theater customers, [*see* Agreement §§ 3.1, 8; Opp. ¶ 3], thus providing MoviePass a potentially valuable relationship with a major theater chain and an assured market over time for one of its core businesses. The same arrangement was designed to afford Landmark a reliable source of ticket revenue and movie attendance, albeit at a discount. [*See* Tr. at 27:8–13; ECF No. 193 ¶¶ 9, 13]. Each side benefitted from the Agreement, and there was mutual consideration—MoviePass received the right to sell tickets to movies at Landmark theaters via MoviePass's subscription service for an extended period, while Landmark received the expectation of predictable revenue and attendance and concession sales over time due to its relationship with MoviePass. [*See, e.g.*, Agreement at 1; Opp. ¶¶ 3, 11–12].

As noted, as part of their agreement, the parties negotiated what each refers to as a liquidated damages provision: MoviePass committed to automatic renewal of the Agreement in one-year terms, and to paying Landmark any shortfall if MoviePass's sales fell below the annualized average of the final four months of the prior term. [*See* Agreement §§ 3.4 and 7]. Unfortunately, MoviePass was experiencing difficulty as of the Agreement's renewal, ceased operations late in the first year of the initial renewal period, and fell well short of the required minimum average sale amount for that period,[3] to the tune of roughly $15 million. [*See* Obj. ¶¶ 8–10; Opp. ¶¶ 18–19].

The Trustee does not dispute the amount that is due if Section 3.4 of the Agreement is valid. [*See* Tr. at 12:3 ("I don't dispute the calculation of the minimum sales shortfall")]. Rather, the Trustee objects that Section 3.4 of the Agreement is an unconscionable and unenforceable liquidated damages provision that violates New York law, [*see, e.g.*, Obj. ¶¶ 16–22], and / or is a penalty that is required to be subordinated under Code Section 726(a)(4), [*see, e.g., id.* ¶¶ 23–30]. The Trustee also objects that allowing the 3.4 Claim would prejudice all other creditors by diluting their recovery. [Reply ¶ 12].

The Trustee's Objection lacks merit for the reasons explained below.

As the Trustee acknowledges, [*id.* ¶ 1], the reasonableness of a liquidated damages provision is examined in light of the circumstances at the time of the contract's creation. *See United Merchants and Manufacturers, Inc. v. Equitable Life Assur. Soc.*, 674 F. 2d 134, 142 (2d Cir. 1982) (citations omitted). This assessment is to be conducted giving "due consideration to

---

[3] The Agreement refers to that minimum sales amount as the "Renewal Term Minimum Sales," equal to "the annualized amount of the monthly average of actual sales for the final four months of the prior Term period (i.e., the last four months of the Initial Term, and subsequently, the last four months of any subsequent year-long Renewal Terms)." [Agreement § 3.4]. If the "Minimum Sales [were] not met, then" MoviePass was required to pay Landmark "the difference between the actual sales and the Renewal Term minimum sales[.]" [*Id.*].

7

the nature of the contract and the attendant circumstances." *See Wilmington Trust Co. v. Aerovias de Mexico, S.A. de C.V.*, 893 F. Supp. 215, 218) (S.D.N.Y. 1995). At the time the Agreement was negotiated and finalized, the liquidated damages provision was reasonable and consistent with both parties' interests in their commercial relationship, and with Landmark's potential damages in the event of a breach by MoviePass. Broadly speaking, under the Agreement, in exchange for Landmark's committing to an ongoing commercial relationship with MoviePass, Landmark obtained assurance that it would realize steady and predictable revenues over time, and MoviePass achieved a stable, ongoing business relationship with an established theater partner, so that MoviePass would reliably have something to market on potentially profitable terms.

The formula for the liquidated damages provision was reasonable at the time of contracting. The initial contract term and then the final four months of each successive renewal period would determine MoviePass's required sales levels for each successive one-year renewal period, and any shortfall was a reasonable proxy for the amount by which Landmark did not receive the benefit of its bargain. Because, as of the date the Agreement was reached, the parties contemplated that Landmark would receive at least the baseline level of ticket revenues from MoviePass sales over each successive one-year period during the life of the Agreement, the Agreement's formula for deeming as liquidated damages the amount of any shortfall in ticket sales reasonably approximated the extent of Landmark's revenue loss resulting from a failure by MoviePass to meet its contractual obligations. Further, while the Trustee objects that this damages remedy will overpay Landmark because Landmark will not be obliged to pay distributors movie royalties that the Trustee speculates would have been due had tickets actually been sold, the Trustee adduced no evidence to back this speculation, [*see* Tr. at 5:1–10:11], and one can just as easily speculate that the formula fails to compensate Landmark for consequential losses it might also suffer, such as lost concession

8

sales resulting from a lack of attendance by MoviePass customers. Thus, the use of this liquidated damages formula reasonably approximated Landmark's likely damages resulting from a breach by MoviePass, particularly given the burden and difficulty of more precisely computing actual damages in the event of a breach. *See, e.g.*, *Honeywell*, 32 Misc. 3d 1223(A), 936 N.Y.S 2d 59, 2011 WL 3198877, at *6 (liquidated damages provisions are enforceable where "the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation" (quoting *Truck Rent-A-Center*, 41 N.Y.2d at 425)).

The parties debated the applicability and significance of *Fifty States Mgmt. Corp. v. Pioneer Auto Parks, Inc.*, 46 N.Y.2d 573, 389 N.E. 2d 113 (1979), a case in which the New York Court of Appeals enforced a rent acceleration provision in a 20-year commercial lease after the tenant breached its monthly rent payment obligation during the lease's first year. [*See, e.g.*, Tr. at 10:14–24, 25:23–26:17; Reply ¶¶ 8–9]. In that case, the tenant objected that the lease's rent acceleration requirement, which made nearly 20 years of rent payments immediately due, constituted an impermissible "penal forfeiture." 46 N.Y.2d at 576. The *Fifty States* court differentiated between breaches of "trivial or inconsequential" lease terms, as to which enforcing a rent acceleration clause may be "an unconscionable penalty," as opposed to a "covenant to pay rent at a specified time," which is "an essential part of the bargain as it represents the consideration to be received for permitting the tenant to remain in possession of the property of the landlord." *Id.* at 577–78. Further, this arrangement is "a device in the landlord-tenant relationship intended to secure the tenant's obligation to perform a material element of the bargain and its enforcement works no forfeiture." *Id.* at 578.

These considerations, albeit deriving from the somewhat different landlord-tenant context, apply here and support enforcing the liquidation clause. As in *Fifty States*, the parties here

9

knowingly negotiated and adopted a provision specifying the consequences of MoviePass's failure to deliver the central element of the core consideration that it provided Landmark, namely, a reliable minimum level of ticket revenue and attendance over the course of a year, in exchange for which MoviePass secured the exclusive right to market Landmark tickets as part of its subscription service[4]—in turn, the central consideration that MoviePass was to receive under the Agreement. An agreement to compensate Landmark through liquidated damages in the amount of any sales shortfall thus reasonably approximates the damages Landmark would suffer in the event of a breach, and, as *Fifty States* put it, "works no forfeiture."  46 N.Y.2d at 578.

The parties, particularly Madison Global, also debated the significance of *In re Republic Airways Holdings Inc.*, 598 B.R. 118 (Bankr. S.D.N.Y. 2019), a case involving an aircraft lease, which Madison Global contends supports the conclusion that the liquidated damages provision here is unenforceable as a penalty or a grossly disproportionate measure of damages. [*See, e.g.*, Mem. at 5; Tr. at 20:7–21:11, 41:10–42:7].  The Court disagrees.

*Republic Airways* concerned the enforceability of a "Deficiency Agreement" incident to a commercial aircraft lease, which provided that, in the event of a Lessee breach, the Lessor was entitled to "liquidated damages" based on the difference between a stipulated loss value of the aircraft and its fair market rental or resale value, thus forcing the lessee to bear any risk of depreciation that had occurred during the life of the lease; moreover, the liquidated damages incorporated a formula requiring payments that would always be "equal to an amount that provides Lessor with a four percent return on [its] aircraft purchase."  598 B.R. at 123–125.  This Court in *Republic Airways* observed that liquidated damages provisions must specify a liquidated amount

---

[4] Specifically, the exclusivity provision of the Agreement provides, in relevant part: "During the Term, Exhibitor shall not, and shall not authorize any third parties to, without limitation, develop, market, distribute, sell or otherwise commercialize or use a service that competes directly with the MoviePass Service, namely, a theatrical movie subscription service." [Agreement § 8].

10

"'only at an amount or by a formula that is reasonable in light of the then anticipated harm'" that a default would cause, 598 B.R. at 129 (quoting N.Y. U.C.C. Law § 2-A-504(1)), and that courts have refused to enforce such provisions where they "lack the required causal link between the anticipated harm and the act of default." *Id.* at 137.

The considerations laid out in *Republic Airways* do not support refusing to enforce the liquidated damages provision here, for the basic reason that, as explained above, the provision in question here reasonably approximates the damages that Landmark anticipated suffering in the event of a breach—namely, a failure to realize contracted-for minimum levels of revenue for the one-year period that the parties negotiated as a reasonable measure of their respective obligations under their Agreement. By contrast, and as emphasized by *Republic Airways*, the formula there required payments that supplied a guaranteed rate of return on the lessor's purchase of the aircraft, not merely compensation based on a reasonably designed approximation of the damages that would be directly caused by a breach. 598 B.R. at 125; *id.* at 134 ("this remedy formulation effectuated a transfer of all market risk, or residual value, including any risk of idiosyncratic depreciation or damage to a particular Aircraft. This provision granted Lessor the ability to retake possession . . . and recover not just a dollar value equal to scheduled rental payments, but also any deficit in the value of the Aircraft that fell short of Lessor's desired total gross return."). In fact, an expert witness in *Republic Airways* opined that the formula at issue in that case "do[es] not purport to liquidate the damages stemming from a default or even seek to mimic them." 598 B.R. at 135. Thus, *Republic Airways* concluded that the provision at issue there constituted an improper penalty, in contrast to the "spirit of a traditional liquidated damages clause—*i.e.*, liquidating damages arising out of a breach of contract, not as a mechanism for generalized risk transfer." 598 B.R. at 139. Again, the offending features of the provision that the Court rejected in *Republic*

11

*Airways* are not present here, because the Agreement here did have the required "causal link between the anticipated harm and the act of default."

For these reasons, the Court concludes that the 3.4 Claim is based on a valid liquidated damages provision, rather than an unenforceable penalty or grossly disproportionate formula, and therefore should not be disallowed under Code Section 502(b)(1).

It follows that, notwithstanding the Trustee's contention in the alternative, the liquidated damages provision does not constitute a fine or penalty subject to subordination under Code Section 726(a)(4). Section 726 lists in order categories of claims eligible for distribution of property of the estate, and the Trustee urges that the liquidated damages amount due should be deemed a fourth-priority "payment . . . for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages . . . to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim." 11 U.S.C. § 726(a)(4). The Court's conclusion that the liquidated damages provision is reasonable and not grossly disproportionate to Landmark's injury from a breach appears to preclude concluding that the resulting damages are "not compensation for actual pecuniary loss" within the meaning of section 726(a)(4), and no case cited by the Trustee suggests otherwise. Indeed, no case cited by the Trustee subordinated any obligation pursuant to a liquidated damages provision, nor has research by the Court revealed any such case. Rather, the cases cited by the Trustee where claims were subordinated under section 726(a)(4) are distinguishable and often involve fines or similar obligations to governmental entities rather than to private parties. [*See, e.g.*, Obj. ¶¶ 24–28 (citing, inter alia, *In re Adelphia Comms. Corp.*, 327 B.R. 143 (Bankr. S.D.N.Y. 2005) (SEC penalty); *In re Gill*, 574 B.R. 709 (B.A.P. 9th Cir. 2017) (IRS penalty); *In re Comstock Fin. Servs., Inc.*, 111 B.R. 849, 860 (Bankr. C.D. Cal. 1990) (RICO treble damages awarded to private claimants))].

Finally, there is no basis to deny Landmark's claim based on the Trustee's argument that allowing the 3.4 Claim will prejudice other creditors by diluting their recoveries. Such a dilutive effect is a function of the Code; if enough funds are not available to pay all holders of a given kind of claim in full, payment on account of such claims are to "be made pro rata among claims of the kind specified" in the subparagraphs of Code Section 726(a). 11 U.S.C. § 726(b); *In re Republic Airways*, 598 B.R. at 145 ("The mere fact that the Guarantees would harm other creditors is not justification for the Court to alter otherwise legitimate contractual rights. By definition, any allowed claim hurts the interests of all other creditors . . . ."). The Claim must be allowed or disallowed on its merits, not based on concerns that the recoveries of holders of similar claims will be diluted.

## **CONCLUSION**

For the foregoing reasons, the Court overrules the Objection. Landmark shall settle an order on five business days' notice. The proposed order must be submitted by filing a notice of the proposed order on the Case Management/Electronic Case Filing docket, with a copy of the proposed order attached as an exhibit to the notice. A copy of the notice and proposed order shall also be served upon opposing counsel. The parties are encouraged to attempt to reach agreement on the form of the proposed order.

IT IS SO ORDERED.

Dated: New York, New York  
      September 24, 2021

*s/ David S. Jones*  
HONORABLE DAVID S. JONES  
UNITED STATES BANKRUPTCY JUDGE