**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

In re

HELIOS AND MATHESON ANALYTICS
INC., *et al.*,[1]

                                        Debtors.

Chapter 7

Case No. 20-10242 (DSJ)

(Jointly administered)

------------------------------------------------------------------x

## ORDER APPROVING ASSET PURCHASE AGREEMENT FOR THE SALE OF ASSETS OF MOVIEPASS, INC., FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, AND GRANTING RELATED RELIEF

Upon the motion [Docket No. 210] (the "Motion")[2] of Alan Nisselson ("Trustee"), trustee

for the chapter 7 estates ("Estates") of Helios and Matheson Analytics Inc., a/k/a MovieFone, Case

No. 20-10242-~~dsjsmb~~, Zone Technologies, Inc., a/k/a Red Zone, a/k/a Zone Intelligence, Case No.

20-10243-~~dsjsmb~~, and MoviePass, Inc., Case No. 20-10244-~~dsjsmb~~ (collectively, the "Debtors"),

for entry of an order (a) approving the Agreement of Sale between the Trustee as seller, and

PreTechnology Inc. ("Purchaser"), as purchaser of certain assets of MoviePass, Inc., free and clear

of all liens, claims, encumbrances, and other interests as described herein, attached to this Order

as Exhibit "A" ("Asset Purchase Agreement"); (b) approving sale procedures and granting related

relief, including a break-up fee and expense reimbursement to the Purchaser if the Trustee receives

and closes a sale of the assets for a higher or better offer; (c) approving the form and manner of

notice of the Motion and the sale substantially in the form attached to the Motion as Exhibit "C"

("Notice"); and (d) granting other related relief; **[DSJ 11/08/2021]**

---

[1] The Debtors in the jointly administered Chapter 7 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Helios and Matheson Analytics, Inc., a/k/a MovieFone (9913), Zone Technologies, Inc., a/k/a Red Zone, a/k/a Zone Intelligence (5124), and MoviePass, Inc. (9893).

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion or the **Asset** Purchase Agreement, as applicable. **[DSJ 11/08/2021]**

and a hearing having been scheduled for November 9, 2021 to approve the Asset Purchase Agreement (the "Sale Hearing");

and the Trustee having filed on November 5, 2021 a Certificate of No Objection Pursuant to Local Bankruptcy Rule 9075-2 regarding the Motion [Docket No. 217] (the "CNO"), asserting that no objections to the Motion were filed, and no higher or better offers to purchase the assets were received;

and the Court having reviewed and considered the CNO and marked the Sale Hearing off its calendar;

and it appearing that the relief requested in the Motion is in the best interests of the Estates and other parties in interest; and sufficient cause appearing;

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

A.      This Court has jurisdiction to consider the Motion and over the property of the Estates, under 28 U.S.C. §§ 157 and 1334.   This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N).  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.      As evidenced by the affidavits of service **and other relevant pleadings** filed with the Court, ~~and based on the representations of counsel at the Sale Hearing,~~ (i) timely, adequate, and sufficient notice of the Motion, the Sale Hearing and the sale transaction has been provided in accordance with Bankruptcy Code sections 102(1) and 363 and Bankruptcy Rules 2002, 6004, and 9006, (ii) such notice was good, sufficient, and appropriate under the circumstances, and (iii) no other or further notice is or shall be required.  **[DSJ 11/08/2021]**

---

[3] These findings and determinations constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. Where appropriate, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.

2

C.      A fair and reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including: (a) all entities known to have expressed an interest in a transaction with respect to all or part of the Assets; (b) counsel to the holders of any prepetition secured debt of the Debtors; (c) all other entities asserting or holding Liens or Claims against the Assets; and (d) any such other party entitled to notice pursuant to Bankruptcy Rule 2002, and Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York.

D.      The terms of the Asset Purchase Agreement are fair and reasonable, reflect an exercise of prudent business judgment of the Trustee, and are the best available to the Estates under the circumstances.  For these reasons and based on the other evidence of record, the Court finds that (i) the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Assets under the circumstances, and (ii) the Asset Purchase Agreement and the closing of the sale transaction present the best opportunity to realize value for the Assets.

E.      The Purchaser (i) is a good faith purchaser for value and, as such, is entitled to all of the protections afforded under Bankruptcy Code § 363(m) and any other similar non-bankruptcy law, and (ii) **has** ~~have~~ otherwise proceeded in good faith in all respects in connection with this proceeding.  Specifically: (a) all payments to be made by the Purchaser in connection with the Asset Purchase Agreement have been disclosed; (b) the negotiation and execution of the Asset Purchase Agreement was at arm's-length and in good faith, and at all times each of the Purchaser and the Trustee was represented by competent counsel; and (c) the Purchaser has not acted in a collusive manner with any person.  Neither the Trustee nor the Purchaser has engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided or result in the imposition of any costs or damages under Bankruptcy Code § 363(n) and the Purchaser will be

acting in good faith within the meaning of Bankruptcy Code § 363(m) in closing the transactions contemplated by the Asset Purchase Agreement. **[DSJ 11/08/2021]**

F.    The Trustee may sell the Assets free and clear of all Liens and Claims against the Assets because the holders of such Liens and Claims have consented expressly or by not objecting to the Motion, or for such other reason ~~adduced at the Sale Hearing~~ in satisfaction of the requirements of section 363(f) of the Bankruptcy Code. **[DSJ 11/08/2021]**

**IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED THAT:**

1.    The Motion is GRANTED as set forth below.

2.    All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits and denied with prejudice.  All persons and entities given notice of the Motion that failed to timely object thereto are deemed to **have waived any objection** ~~consent~~ to the relief sought therein. **[DSJ 11/08/2021]**

3.    The Asset Purchase Agreement, including any amendments, supplements, and modifications thereto, and all of the terms and conditions therein, are hereby approved.

4.    The Trustee is hereby authorized and empowered to: (a) execute the Asset Purchase Agreement, along with any additional instruments or documents that may be necessary to implement the Asset Purchase Agreement; (b) do all things and take all actions necessary to consummate the sale transaction in accordance with the terms and conditions of the Asset Purchase Agreement; and (c) take all further actions as may reasonably be requested by the Purchaser for the purpose of transferring or reducing to possession the Assets, in each case without further application to, or order of, the Court.

5.      Except as otherwise expressly provided in the Asset Purchase Agreement and the terms of this Order, pursuant to Bankruptcy Code §§ 363(b) and 363(f), the Assets shall be transferred to the Purchaser on the Closing Date free and clear of all liens, claims, encumbrances, rights, and encumbrances, including, without limitation, all restrictions, hypothecations, charges, indentures, instruments, options, security interests, conditional sale rights or other title retention agreements, pledges, judgments, demands, rights of first refusal, consent rights, contract rights, rights of recovery, reimbursement rights, contribution claims, indemnity rights, exoneration rights, alter-ego claims, tax claims, regulatory violations by any governmental entity, decrees of any court or foreign or domestic governmental entity, charges of any kind or nature, debts arising in any way in connection with any agreements, acts, or failures to act, obligation claims, demands, guaranties, contractual or other commitment rights and claims, and all other matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the Debtors' chapter 7 cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under any theory, law or doctrine of successor liability or related theories, as well as any and all "claims" as that term is defined in section 101(5) of the Bankruptcy Code (all of the foregoing, collectively, "Claims"), (ii) Liens (as defined in the Asset Purchase Agreement), including, without limitation, any liens arising under or set forth in any prepetition loan document or agreement of any of the Debtors (the "Liens"), with such Liens to attach to the proceeds of the sale transaction in the order of their priority, with the same validity,

force and effect which they now have as against such Assets, and (iii) to the maximum extent permitted by law, any other interests within the meaning of section 363(f) of the Bankruptcy Code.

6.    On and after the Closing Date, the Purchaser is authorized to file a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens and Claims of any kind or nature whatsoever with respect to the Assets being transferred.  Upon the Closing Date, this Order shall constitute a full and complete general assignment, conveyance, and transfer of the applicable Assets transferring good and marketable title in and to such Assets in accordance with the Asset Purchase Agreement.

7.    This Order is binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments.

8.    All persons and entities (and their respective successors and assigns), including, without limitation, all debt security holders, equity security holders, affiliates, governmental, tax, and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants, and other creditors holding Liens, Claims, or interests of any kind or nature whatsoever arising under or out of, in connection with, or in any way relating to, the Assets are forever barred, estopped, and permanently enjoined from asserting such Liens, Claims or interests against the Purchaser, its successors or assigns, or the respective Assets.

9.    The Purchaser is authorized to file, register, or otherwise record a copy of this Order, which thereupon shall constitute conclusive evidence of the release of all Liens and Claims against the Purchaser and the respective Assets.  Notwithstanding the foregoing, the provisions of

this Order authorizing the sale transaction free and clear of Liens and Claims shall be self-executing, and neither the Trustee nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order.

10.     The Purchaser is not and shall not be deemed a successor to the Debtors or the Estates as a result of the consummation of the sale transaction.  The Purchaser shall not have any responsibility for any liability or other obligation of the Debtors, the Trustee, or the Estates, whether known or unknown as of the Closing Date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including under any law or theory of successor or vicarious liability.

11.     Effective upon the Closing Date, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Purchaser, or its assets (including the respective Assets), with respect to any Lien or Claim relating to the Assets, including, without limitation, the following actions: (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any Lien, Claim, or other interest; or (iv) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order.

12.     The Purchaser has acted without collusion, in good faith in undertaking the sale transaction.  The sale transaction may not be avoided, nor may any costs or damages be imposed, under section 363(n) of the Bankruptcy Code and the Purchaser is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

13.     The terms and provisions of the Asset Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Trustee and the Estates and their respective successors and assigns, and their creditors, the Purchaser, and its affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting Liens, Claims, or other interests on or against the Assets to be sold to the Purchaser pursuant to the Asset Purchase Agreement.  Nothing contained in any order of any type or kind entered in the Debtors' chapter 7 cases shall conflict with or derogate from the provisions of the Asset Purchase Agreement or this Order, and to the extent of any conflict or derogation between this Order or the Asset Purchase Agreement and such future order, the terms of this Order and the Asset Purchase Agreement shall control.

14.     The Asset Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by all parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on any of the Estates.

15.     The Purchaser shall not be required to seek or obtain relief from the automatic stay under Bankruptcy Code § 362 to enforce any of its remedies under the Asset Purchase Agreement or any other sale-related document.  The automatic stay imposed by Bankruptcy Code § 362 is modified solely to the extent necessary to implement the preceding sentence, provided however that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

16.     The requirements set forth in Bankruptcy Rules ~~6003(b) and~~ 6004 have been satisfied or otherwise deemed waived.   The requirements set forth in Local Bankruptcy Rule 9013-1(b) are satisfied by the contents of the Motion.  **[DSJ 11/08/2021]**

17.      As provided by Bankruptcy Rules 7062 and 9014, the terms and conditions of this Order shall be effective and enforceable immediately upon entry and shall not be subject to the stay provisions contained in Bankruptcy Rule 6004(h).  Time is of the essence in closing the sale, and the Trustee and the Purchaser intend to close the sale as promptly as practicable following entry of this Order.

18.      This Court shall retain exclusive jurisdiction to, among other things, interpret, enforce, and implement the terms and provisions of this Order and the Asset Purchase Agreement, including all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connections therewith in all respects, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the sale transaction.

Dated: New York, New York
      November 8, 2021

                                        *s/ David S. Jones*
                                       Honorable David S. Jones
                                       United States Bankruptcy Judge

**Exhibit A**
**Asset Purchase Agreement**

**AGREEMENT OF SALE**

AGREEMENT made as of this 13th day of October, 2021 between Alan Nisselson ("Trustee"), solely in his capacity as Trustee for the Chapter 7 estates of Helios & Matheson Analytics, Inc., Zone Technologies, Inc., and MoviePass, Inc. ("MoviePass", and together with the aforesaid Chapter 7 estates, "Debtors"), whose jointly administered cases are pending in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"), under Case No. 20-10242-dsj ("Bankruptcy Cases"), having an address at c/o Windels Marx Lane & Mittendorf, LLP, 156 West 56th Street, New York, New York 10019, Attention: Alan Nisselson, Esq., and PreTechnology LLC ("Purchaser"), a Delaware Limited Liability Company, having an address at 609 Greenwich Street, 5th Floor, New York, New York 10014 (the "Agreement").

**RECITALS**

WHEREAS, Purchaser desires to purchase from the Trustee, all of the Trustee's or MoviePass' right, title, and interest in and to the Acquired Assets described below, and the Trustee desires to sell all of the Trustee's right, title, and interest in the Acquired Assets to Purchaser, subject to and upon the terms and covenants set forth in this Agreement, and contingent upon the entry of an appropriate Order of the Bankruptcy Court (the "Sale Approval Order") authorizing the Trustee's sale of the Acquired Assets to Purchaser, "AS IS", "WHERE IS", and without representation or warranty of any kind, and free and clear of all liens, claims, interests, and encumbrances of whatever kind or nature, with any such liens, claims, interests, and encumbrances to attach to the proceeds of the sale in the order of priority of such liens, claims, interests, and encumbrances.

NOW, THEREFORE, in consideration of the terms, covenants and conditions set forth below, the parties agree as follows:

1.      <u>Agreement to Sell and Purchase.</u>

(a)      Trustee agrees to sell, convey and assign to Purchaser whatever right, title, and interest Trustee has, if any, in and to the assets (the "Acquired Assets") described on Schedule A attached to and incorporated in this Agreement by reference, and Purchaser agrees to purchase, accept, and assume such title in and to the Acquired Assets upon the terms set forth in this Agreement and the Sale Approval Order, on the first business day after the expiration of the 14th day following the entry of the Sale Approval Order, or (ii) within 48 hours of entry of the Sale Approval Order, if the Court waives the requirements of Federal Rule of Bankruptcy Procedure 6004(h) (the "Closing Date"). Such sale of the Acquired Assets is expressly contingent upon and subject to the Bankruptcy Court's approval of the Sale Approval Order after notice and hearing. If after any competitive bidding, the Sale Approval Order shall provide that Purchaser is the Successful Bidder for the Acquired Assets, Purchaser shall execute and deliver to the Trustee the Memorandum of Sale – Successful Bidder attached to this Agreement as Exhibit 2 ("Memorandum").

(b)    Notwithstanding anything contained in this Agreement to the contrary, the Trustee does not make any warranty or representation that the Trustee has any rights, title, or interest in the Acquired Assets or that the Trustee can convey same to Purchaser, and the Trustee shall convey only such rights, title, and interest that the Trustee or MoviePass  may have in the Acquired Assets, and the Trustee's inability to do so, shall not constitute a breach by Trustee of any of his obligations under this Agreement or entitle the Purchaser to terminate this Agreement.

(c)    Time is of the essence for Purchaser to perform all of the obligations required on its part to be performed under this Agreement by the Closing Date.

2.    <u>Amount and Manner of Payment of Purchase Price.</u>

(a)    Purchaser agrees to pay to Trustee for the acquisition of the Acquired Assets the amount of One Hundred Forty Thousand Dollars and No Cents $140,000.00 (the "Purchase Price").  Purchaser will pay the Purchase Price to the Trustee as follows: (i) $15,000.00 to the Trustee (the "Down Payment") on signing of this Agreement; and (ii) the difference between the Purchase Price and the Down Payment $125,000.00 (the "Balance") in full on the Closing Date. Purchaser shall pay the Down Payment and the Balance to the Trustee, by wire transfer to the Trustee's account set forth on Schedule B, <u>provided that</u>, if the Trustee shall determine, following any competitive bidding for the Acquired Assets, that the final amount offered by Purchaser for the Acquired Assets was the highest or best offer, this Agreement of Sale shall be deemed amended to reflect the final offer made by the Purchaser, and that Purchaser shall pay to the Trustee on the Closing Date the new Purchase Price as reflected in the Memorandum, less the Down Payment.

(b)    If Trustee is unable to obtain the Sale Approval Order, or is otherwise unable to perform his obligations within 30 days of this Agreement, either party shall have the right to cancel this Agreement, whereupon, if Purchaser is not then in default of this Agreement, Trustee will refund the Down Payment to Purchaser.  Upon such refund, this Agreement will wholly cease and terminate and neither party will have any further claim against the other under this Agreement, except as to those provisions that, by their express terms, survive termination.  Notwithstanding anything contained in this Agreement to the contrary, Purchaser's exclusive remedy for Trustee's inability to obtain the Sale Approval Order or to perform any obligation under this Agreement, is to terminate this Agreement and to have the Down Payment returned and in no event shall the Trustee or Cassel Salpeter & Co., LLC ("Cassel Salpeter") have any personal liability for any claims, liabilities, or expenses incurred by Purchaser arising out of or in connection with this Agreement or the transactions contemplated by this Agreement.

(c)    The Acquired Assets will be deemed conveyed by the documents described below and the Sale Approval Order shall constitute such bill of sale.  Purchaser is obligated to and shall pay any and all sales tax or any other transfer tax obligation, if any, in connection with the sale of the Acquired Assets and payment of the Purchase Price.

3.    <u>Higher or Better Offer; Break-Up Fee and Expense Reimbursement</u>.  Should the Trustee select, and the Bankruptcy Court approve, another offer as higher or better than either the Purchase Price or any other offer Purchaser might make, such that Purchaser is not the winning bidder for the Acquired Assets, and in consideration for Purchaser having expended considerable time and expense in connection with this Agreement and its negotiation, promptly upon the closing

of such alternative transaction, the Trustee shall pay to Purchaser solely from the proceeds of the higher or better offer received by the Trustee and from no other source (i) a break-up fee of $4,200.00, an amount equal to three percent (3%) of the Purchase Price (the "Break-Up Fee"), and (ii) Purchasers' reasonable expenses incurred in connection with the Agreement, including reasonable attorneys' fees, provided the amount of such expense reimbursement does not exceed $10,000.00 (the "Expense Reimbursement"). The Trustee will not select or accept another offer as higher or better than the Purchase Price, unless such offer is for not less than $160,000.00, an amount sufficient to pay the Break-Up Fee and the maximum Expense Reimbursement, and to benefit the estate, and is subject to Bankruptcy Court approval.

4.      <u>Bankruptcy Court Approval.</u>   Trustee's obligations under this Agreement are entirely subject to, and contingent upon Bankruptcy Court approval of the sale transaction embodied in this Agreement as may be reflected in the Sale Approval Order. Purchaser acknowledges that Trustee will seek approval of the Sale Approval Order as part of a motion pursuant to Bankruptcy Code § 363(b) and (f), (11 U.S.C. § 363(b) and (f)). Trustee will utilize commercially reasonable efforts to obtain Bankruptcy Court approval of the Sale Approval Order, and in support, will immediately file the appropriate motion with the Bankruptcy Court.

5.      <u>Conditions of Sale.</u>

(a)     Purchaser's obligations under this Agreement are not conditioned or contingent upon Purchaser obtaining financing from any source.

(b)     Purchaser acknowledges that except to the extent that a representation is made specifically elsewhere in this Agreement, neither Trustee nor any person or entity who acted on behalf of the Trustee, including his attorneys or Cassel Salpeter, has made and does not make any representations as to the physical condition, expenses, operations, or any other matter or thing affecting or related to the Acquired Assets or this transaction, which might be pertinent to the purchase of the Acquired Assets or the execution of this Agreement. Trustee is not liable or bound in any manner by any expressed or implied warranties, guaranties, promises, statements, representations, or information of any kind or type pertaining to the Acquired Assets, made or furnished by any broker, agent, employee, servant, attorney, or other person or entity representing or purporting to represent Trustee, unless such warranties, guaranties, promises, statements, representations, or information are expressly and specifically set forth in this Agreement. All prior understandings and agreements between the parties with respect to the subject matter of this Agreement are merged into this Agreement, which alone fully and completely expresses their agreement.

(c)     Purchaser has been given the opportunity by the Trustee to inspect, and has inspected, the Acquired Assets, including the software, code, and data that (1) were owned, maintained, or used by MoviePass, (2) previously were located in MoviePass accounts/repositories at AWS, Atlassian, and/or GitHub, and (3) have been archived by the Trustee. Purchaser therefore covenants and agrees to accept the Acquired Assets in their "AS IS", "WHERE IS" condition on the date of the Closing. Trustee is not, and shall not be, obligated to make any repairs, alterations, improvements or additions to the Acquired Assets whatsoever.

{11967882;3}                                    3

(d)    The sale is being made in accordance with the provisions of Bankruptcy Code §
363 (11 U.S.C. § 363) and shall be effectuated pursuant to the Sale Approval Order entered by the
Bankruptcy Court providing for the sale of the Acquired Assets free and clear of all liens,
judgments, claims, taxes, and encumbrances of whatever kind or nature (the "Liens"), with Liens
to attach to the net proceeds of the Purchase Price, in the order of priority of such Liens.  Purchaser
agrees that for the purposes of this Agreement, the Order shall constitute the bill of sale for the
Acquired Assets.

6.    <u>Disposition of Down Payment</u>.  The Down Payment will be held and disbursed as
follows: (a) if the Closing takes place, the Down Payment will be retained by Trustee for the Debtor
MoviePass' estate, on behalf of which the Acquired Assets are to be sold; and (b) if the Closing
does not take place by reason of the failure of a party to comply with such party's obligations
under this Agreement, the Down Payment will be paid to the party that did not breach this
Agreement, as liquidated damages and not as a penalty.

7.    <u>The Closing.</u>

(a)    If the Bankruptcy Court shall determine that the Purchaser has made the highest or
best offer for the Acquired Assets, the Closing shall take place at the time provided for in Section
1(a).

(b)    The closing documents described below will be delivered upon the Trustee's receipt
of the Purchase Price at the office of Windels Marx Lane & Mittendorf, LLP, 156 West 56th Street,
New York, New York 10019 at 10:00 a.m. on the Closing Date (the "Closing").

(c)    Trustee will have the right to adjourn the Closing no more than 30 days in order to
perform his obligations under this Agreement.  Purchaser will not have a right to adjourn the
Closing, with time being of the essence with respect to Purchaser's obligations to pay the Balance
and accept the Closing documents.

(d)    At Closing, Purchaser will deliver: (i) the Balance; and (ii) such other documents
as shall be reasonably requested by Trustee to effectuate this Agreement, the Sale Approval Order,
and the Closing of the sale of Acquired Assets.

(e)    At the Closing, the Trustee shall deliver to the Purchaser Assignment Agreements
with respect to the transfer of the Trademarks and Patents described on Schedule A to this
Agreement, and such other instruments of transfer as Purchaser shall reasonably require.
Purchaser shall draft all documents, instruments, and agreements it deems necessary to complete
the Closing, which shall be subject to the approval of the Trustee and his counsel, which approval
shall not be unreasonably withheld.  Promptly after the Closing, the Trustee will work diligently
and in cooperation with Purchaser to effect the transfer to Purchaser of:

(i)    the Domain Names described on Schedule A; and

(ii)    the software, code, and data that (1) were owned, maintained, or used by
MoviePass, (2) previously were located in MoviePass
accounts/repositories at AWS, Atlassian, and/or GitHub, and (3) have been

archived by the Trustee, excluding Consumer PII, defined below, (the "MoviePass Archived Data").

8.    <u>Consumer PII.</u>    Notwithstanding anything contained in this Agreement to the contrary, the Acquired Assets do not include and the Trustee will not be transferring to the Purchaser any lists of the Subscribers of MoviePass, or any data or information relating to such Subscribers, including any consumer personally identifiable information, which shall have the meanings of (a) Personal Information set forth in Section D under Definitions in the Decision and Order attached to the FTC Order, defined below, and (b) personally identifiable information set forth in the Bankruptcy Code, 11 U.S.C. § 101(41A), and mean individually identifiable information from or about an individual consumer, including (1) first name (or initial) and last name; (2) home or other physical address, including street name and name of city or town, or other information about the location of the individual, including but not limited to fine or course location or GPS coordinates; (3) email or other electronic address; (4) telephone number; (5) date of birth, (6) the number of a birth or adoption certificate, or a place of birth, if identified in connection with a name, geographic or electronic address, a telephone number, social security number, or credit or debit card number, (7) social security number, (8) other government-issued identification numbers, such as driver's license number, military identification number, passport number, or other personal identification number; (9) financial institution account number; (10) credit or debit card information; (11) authentication credentials, such as user name or password, or (12) any other information concerning an identified individual that, if disclosed, will result in contacting or identifying such individual physically or electronically ("Consumer PII").

9.    <u>Notices.</u>    Any notice or demand required by, or desired to be sent under this Agreement, must be in writing, and must be sent to the party at its address set forth in the preamble by mailing the same by express mail, or delivery by Federal Express or by other nationally recognized overnight courier using a written receipt or other valid written proof of delivery, or by hand delivery using a written receipt.  The attorneys for the parties may give notices or demands on behalf of their respective clients.  Either party may designate by written notice, in writing, a new or other address to which notices or demands are thereafter to be sent.  Copies of all notices will be sent as follows:

> If to Trustee, a copy will also be sent to:
>
> Windels Marx Lane & Mittendorf, LLP
> 156 West 56th Street
> New York, New York 10019
> Attn: Leslie S. Barr, Esq.
>
> If to Purchaser, a copy will also be sent to:
>
> Reitler Kailas & Rosenblatt, LLP
> 885 Third Avenue, 20th Floor
> New York, New York 10022
> Attn: Edward G. Reitler, Esq.

10.     <u>Broker</u>.   Trustee and Purchaser each represent to one another that they have not dealt with any broker, salesperson, or finder in connection with the transaction contemplated by this Agreement, or other party who may claim to have been  introduced by Purchaser to Trustee, except that the Trustee engaged Cassel Salpeter to provide financial advice to Trustee, and the Debtors' Estates shall be responsible for payment of the fees and expenses of Cassel Salpeter pursuant to separate agreement and subject to the approval of the Bankruptcy Court.   No commission or compensation shall be paid to any such person or entity, and in any event, any such person or entity shall be paid only pursuant to an Order of the Bankruptcy Court.

11.     <u>Trustee's Representations and Warranties</u>.   Trustee makes the following representations and warranties to Purchaser in connection with the sale of the Acquired Assets pursuant to this Agreement, which shall be true, accurate, and complete as of the date of this Agreement and as of the Closing:

(a)     Subject to the entry of the Sale Approval Order, (i) Trustee has the legal power, right and authority to enter into this Agreement and to consummate the transactions contemplated by this Agreement; and (ii) this Agreement constitutes the legal and  binding obligation of Trustee, enforceable in accordance with its terms, except as such enforceability may be limited by general equitable principles and by bankruptcy, moratorium, insolvency, fraudulent conveyance, and other laws affecting creditors' rights and remedies generally, or similar laws, and/or the application of general principles of equity.

(b)     Except for Purchaser's rights expressly provided for in this Agreement and the rights of any other person or entity whose offer to purchase the Acquired Assets was accepted by the Trustee, no person or entity has any rights to acquire the Acquired Assets or any part thereof.

(c)     Trustee is not a "foreign person" as defined by the Internal Revenue Code and regulations promulgated thereunder, and at the Closing, upon request by Purchaser, Trustee will deliver an appropriate certification to that effect.

12.     <u>Purchaser's Representations and Warranties</u>.   Purchaser makes the following warranties and representations to Trustee which shall be true, accurate and correct as of the date of this Agreement and as of the Closing:

(a)     Purchaser has the legal power, right and authority to enter into this Agreement and to consummate the transactions contemplated by this Agreement.   The individual executing this Agreement on behalf of Purchaser has the legal power, right, and authority to bind Purchaser to the terms and conditions of this Agreement.

(b)     As of the date of this Agreement, all necessary action has been taken by Purchaser in connection with entering into this Agreement and the consummation of the transactions contemplated by this Agreement.

(c)     This Agreement and all other documents that may be executed by Purchaser in connection with this Agreement are and will be valid, legally binding obligations of Purchaser,

enforceable against Purchaser in accordance with their respective terms, except as such enforceability may be limited by general equitable principles and by bankruptcy, moratorium, insolvency, fraudulent conveyance, and other laws affecting creditors' rights and remedies generally, or similar laws, and/or the application of general principles of equity.

(d)    Upon Closing, Purchaser shall be bound by and comply with the terms and provisions of the *Agreement Containing Consent Order*, among the Federal Trade Commission ("FTC"), the Trustee, and others, as approved by the FTC Commissioner, File No. 192 3000, and authorized and approved by Order of the Bankruptcy Court entered on December 11, 2020 (Doc. 129), and attachments thereto ("FTC Order"). The Trustee has exerted best efforts to remove all Consumer PII from the MoviePass Archived Data and the Purchaser has agreed to such removal. If, after Closing, Purchaser shall discover any Consumer PII in the MoviePass Archived Data or in any of the Acquired Assets delivered by the Trustee, Purchaser shall immediately remove any such Consumer PII from the MoviePass Archived Data or Acquired Assets, and delete and/or return the removed Consumer PII to the Trustee.

13.    <u>Successors and Assigns</u>.  This Agreement will be binding upon, and will inure to the benefit of, the respective parties, and their respective successors and permitted assigns. Purchaser's rights under this Agreement may not be assigned without the prior written consent of Trustee, which Trustee may grant or withhold in Trustee's sole and absolute discretion, and any assignment or attempted or purported assignment made without such consent will be null and void and of no force or effect, and will constitute a non-curable default by Purchaser.

14.    <u>Entire Agreement: Construction</u>.  This Agreement constitutes the entire agreement between the parties with respect its subject matter, and there are no other covenants, promises or agreements, written or oral, and no agent of either party has the authority to make representations or other agreements, verbal or written which modify or vary the terms or conditions of this Agreement.  This Agreement supersedes and cancels all negotiations, arrangements, agreement and understandings, if any, between the parties to this Agreement.  The singular will include the plural, and vice versa, and masculine, feminine and neuter pronouns will be fully interchangeable, where the context so requires.  References to "hereof" or "hereunder" set forth in this Agreement will refer to this entire Agreement and not to the section or subsection in which they appear unless there is no reasonable construction to that effect.

15.    <u>Modification</u>.  This Agreement may not be changed or terminated orally.  The provisions of this Agreement will apply to and bind the heirs, personal representatives, administrators, successors, and permitted assigns of the respective parties.

16.    <u>Enforceability</u>.  If any provision of this Agreement is determined to be unenforceable or invalid, such invalidity or unenforceability will not affect the remaining provisions of this Agreement, as the provisions of this Agreement are intended to be and will be severable.  It is the intention of the parties that if any provision of this Agreement is capable of two constructions, one of which would render the provision void and the other of which would render the provision valid, then the provision will have the meaning that renders it valid.

17.    <u>Severability</u>.    If any provision of this Agreement is found to be void or unenforceable by a court of competent jurisdiction, the remaining provisions will nevertheless be binding upon the parties with the same force and effect as though the void or unenforceable part had been severed and deleted.

18.    <u>Gender</u>.  A reference in this Agreement to any gender includes any other one gender and the singular includes the plural, and vice versa, unless the context requires otherwise.

19.    <u>Waiver</u>.  Any failure by any party to insist upon strict performance by the other party of any of the provisions of this Agreement will not be deemed a waiver of any of the provisions of this Agreement, despite the number of violations or breaches that may occur, and each such party, notwithstanding any such failure, will have the right thereafter to insist upon strict performance by the other party of any and all of the provisions of this Agreement to be performed by such other party.

20.    <u>No Offer</u>.  Trustee's delivery of this Agreement for review by Purchaser is not an offer and does not create any rights in favor of Purchaser or others or create any obligation upon Trustee or the Debtors' estates.

21.    <u>Expenses</u>.  Except as otherwise set forth herein, including without limitation, with respect to the Expense Reimbursement, each Party shall bear its own expenses incurred in connection with the negotiation and execution of this Agreement and each other document and instrument contemplated by this Agreement and the consummation of the transactions contemplated hereby and thereby.

22.    <u>Construction</u>.  The provisions of this Agreement will be governed by, and construed and enforced according to, the laws of the State of New York applicable to agreements made and to be performed wholly therein and applicable federal law.  The parties hereby consent to the jurisdiction of the courts of the State of New York, County of New York, provided that any action or proceeding arising out of this Agreement will be brought exclusively in the United States Bankruptcy Court while the Bankruptcy Case is pending.  The parties waive any defense of lack of personal jurisdiction or forum non conveniens in response to any such action or proceeding or to seek to change venue from the forums provided for in this Section 19.  The parties consent to the entry of judgment and final orders by the Bankruptcy Court concerning any matter arising from or related to the making, interpretation, and enforcement of this Agreement or any issues arising hereunder.  This Agreement will be construed and interpreted without regard to any presumption or other rule requiring construction or interpretation against the party causing this Agreement to be drafted.

23.    <u>Waiver of Jury Trial</u>.  Except as prohibited by applicable law, the parties waive trial by jury in any litigation arising out of, or connected with, or relating to, this Agreement.  With respect to any matter for which a jury trial cannot be waived, the parties agree not to assert any such matter as a counterclaim in, nor move to consolidate such claim with, any action or proceeding in which a jury trial is waived.

24.    <u>Survival</u>.  No provision of this Agreement will survive the Closing, except those obligations expressly stated in this Agreement to survive or to be performed subsequent to the Closing Date.

25.    <u>Counterpart Execution</u>.  This Agreement will not be binding unless a fully executed counterpart has been delivered to each of the parties.  This Agreement may be executed in counterparts and by facsimile or electronic transmission.  This Agreement is subject to Bankruptcy Court approval and the entry of the Order.

26.    <u>Section Headings</u>.  The section headings used herein are for convenience of reference only and will not limit or define the provisions of this Agreement.

IN WITNESS WHEREOF, the parties have signed this Agreement on the date first above written.


TRUSTEE                                      PURCHASER



By: _/s/ Alan Nisselson_____            By: _/s/ Stacy Spikes_____
       Alan Nisselson, Trustee                Its:    Stacy Spikes, CEO

Schedule A

Acquired Assets

## NO SUBSCRIBER INFORMATION OR OTHER ASSETS

**NOTWITHSTANDING ANYTHING CONTAINED IN THIS SCHEDULE A TO THE CONTRARY, THE ACQUIRED ASSETS DO NOT INCLUDE AND THE TRUSTEE WILL NOT BE TRANSFERRING TO THE PURCHASER ANY LISTS OF THE SUBSCRIBERS OF MOVIEPASS, OR ANY DATA OR INFORMATION RELATING TO SUCH SUBSCRIBERS, INCLUDING ANY CONSUMER PERSONALLY IDENTIFIABLE INFORMATION, WHICH SHALL HAVE THE MEANINGS OF (A) PERSONAL INFORMATION SET FORTH IN SECTION D UNDER DEFINITIONS IN THE DECISION AND ORDER ATTACHED TO THE *AGREEMENT CONTAINING CONSENT ORDER*, AMONG THE FEDERAL TRADE COMMISSION ("FTC"), THE TRUSTEE, AND OTHERS, AS APPROVED BY THE FTC COMMISSIONER, FILE NO. 192 3000, AND AUTHORIZED AND APPROVED BY ORDER OF THE BANKRUPTCY COURT ENTERED ON DECEMBER 11, 2020 (DOC. 129), AND (B) PERSONALLY IDENTIFIABLE INFORMATION SET FORTH IN THE BANKRUPTCY CODE, 11 U.S.C. § 101(41A), AND MEANS INDIVIDUALLY IDENTIFIABLE INFORMATION FROM OR ABOUT AN INDIVIDUAL CONSUMER, INCLUDING (1) FIRST NAME (OR INITIAL) AND LAST NAME; (2) HOME OR OTHER PHYSICAL ADDRESS, INCLUDING STREET NAME AND NAME OF CITY OR TOWN, OR OTHER INFORMATION ABOUT THE LOCATION OF THE INDIVIDUAL, INCLUDING BUT NOT LIMITED TO FINE OR COURSE LOCATION OR GPS COORDINATES; (3) EMAIL OR OTHER ELECTRONIC ADDRESS; (4) TELEPHONE NUMBER; (5) DATE OF BIRTH, (6) THE NUMBER OF A BIRTH OR ADOPTION CERTIFICATE, OR A PLACE OF BIRTH, IF IDENTIFIED IN CONNECTION WITH A NAME, GEOGRAPHIC OR ELECTRONIC ADDRESS, A TELEPHONE NUMBER, SOCIAL SECURITY NUMBER, OR CREDIT OR DEBIT CARD NUMBER, (7) SOCIAL SECURITY NUMBER, (8) OTHER GOVERNMENT-ISSUED IDENTIFICATION NUMBERS, SUCH AS DRIVER'S LICENSE NUMBER, MILITARY IDENTIFICATION NUMBER, PASSPORT NUMBER, OR OTHER PERSONAL IDENTIFICATION NUMBER; (9) FINANCIAL INSTITUTION ACCOUNT NUMBER; (10) CREDIT OR DEBIT CARD INFORMATION; (11) AUTHENTICATION CREDENTIALS, SUCH AS USER NAME OR PASSWORD, OR (12) ANY OTHER INFORMATION CONCERNING AN IDENTIFIED INDIVIDUAL THAT, IF DISCLOSED, WILL RESULT IN CONTACTING OR IDENTIFYING SUCH INDIVIDUAL PHYSICALLY OR ELECTRONICALLY.**

**NOR DO THE ACQUIRED ASSETS INCLUDE AND THE TRUSTEE WILL NOT BE ASSIGNING ANY CONTRACTS BETWEEN MOVIEPASS AND ANY THIRD PARTY OR TRANSFERRING ANY OTHER ASSETS IN WHICH MOVIEPASS HAS ANY INTEREST.**

**MOVIEPASS ARCHIVED DATA**

All software, code, and data that (1) were owned, maintained, or used by MoviePass, (2) previously were located in MoviePass accounts/repositories at AWS, Atlassian, and/or GitHub, and (3) have been archived by the Trustee, excluding Consumer PII, defined in the Agreement of Sale.

**DOMAIN NAMES**

1. MoviePass.com
2. moviepass.net

**TRADEMARKS**

1. TM Ref. No. 177591-010000/US-002, Registration No. 4,302,987, Registration Date: March 12, 2013, MoviePass, "Administration of a membership program entitling participants to attend movies in theaters and other live entertainment events"
2. TM Ref. No. 177591-010000/US-003, Registration No. 4,302,988, Registration Date: March 12, 2013, MoviePass (stylized/design), "Administration of a membership program entitling participants to attend movies in theaters and other live entertainment events"

**PATENTS**

1. No. US 8,484,133 B1 – Secure Targeted Personal Buying/Selling Method and System; Date of Patent:  July 9, 2013
2. No. US 8,612,325 B2 – Automatic Authentication and Funding Method: Date of Patent: Dec. 17, 2013
3. No. US 9,135,578 B2 – Secure Targeted Personal Buying/Selling Method and System; Date of Patent Sep. 15, 2015

Schedule B

<u>Trustee's Wire Instructions</u>

<u>Exhibit 1</u>

<u>(Purposely Omitted)</u>

Exhibit 2

Memorandum – Successful Bidder

MoviePass, Inc.

MEMORANDUM OF SALE – SUCCESSFUL BIDDER

_____, 2021

Acquired Assets:


High Bid: _____

To: _____

Reference is made to the Agreement of Sale to which this Memorandum of Sale is attached (the "**Agreement of Sale**").  Capitalized terms used herein shall have the meanings contained in the Agreement of Sale, unless otherwise defined herein.  Alan Nisselson, in his capacity as trustee for the bankruptcy estates ("**Estates**") of Helios and Matheson Inc. a/k/a MovieFone, Case No. 20-10242-dsj, Zone Technologies, Inc. a/k/a Red Zone a/k/a Zone Intelligence, Case No. 20-10243-dsj, and MoviePass, Inc., Case No. 20-10244-dsj, has determined that your offer in the amount of $_____ was the highest or best offer for the Acquired Assets (defined in the Agreement of Sale) and you are the Successful Bidder. Accordingly upon the entry of the Sale Approval Order approving the sale to you of the Acquired Assets as the Successful Bidder, the Agreement of Sale shall be deemed amended to provide that the Purchase Price is $_____.

By executing this document below, you agree that the Agreement of Sale is amended as herein provided. As amended hereby, the Agreement of Sale shall remain in full force and affect.


_____          _____
Alan Nisselson, Trustee                                            SUCCESSFUL PURCHASER (Signature)

                                                                              _____
                                                                              PRINT NAME

                                                                              _____
                                                                              ADDRESS

                                                                              _____
                                                                              ADDRESS (CITY, STATE, ZIP)

                                                                              _____
                                                                              TELEPHONE NUMBER

                                                                              _____
                                                                              EMAIL ADDRESS